LUCIUS H. TOWNSEND, Respondent, *v.* ONEONTA, COOPERSTOWN AND RICHFIELD SPRINGS RAILWAY COMPANY, Respondent.

ATTORNEY-GENERAL OF THE STATE OF NEW YORK and KNICKER-BOCKER TRUST COMPANY, Appellants.

*Receiver of a railroad — when he should not be authorized to issue receiver's certificates — purposes to be subserved by the appointment of a receiver.*

During the pendency of an action brought to foreclose a trust mortgage executed by a railroad company, a temporary receiver, appointed in an action to sequestrate the property of the railroad company, made an application to the court for leave to issue and sell receiver's certificates, alleging in his petition that the operating expenses of the railroad were about equal to its income and that he was wholly without funds for all of the purposes of his trust other than the bare operating expenses. He made no proof that a larger income from the railroad property could reasonably be expected in the near future.

*Held,* that it was error for the court, upon this showing and over the objection of the bondholders, to authorize the receiver to issue certificates to pay the interest past due on the mortgage bonds and to provide that such certificates should be a lien on the railroad property superior to the trust mortgage.

The jurisdiction of the court to appoint receivers of property has for its primary object the care and custody of the property which is the subject of the receivership pending the determination of the questions involved in the litigation and to enable the court by placing the property under the control of its officer to preserve it to answer the final decree which may be made in the action.

One of the purposes of a receiver of a railroad corporation is to manage and operate the property and maintain its integrity as a road and as a going business.

The authority of the court to authorize a receiver of a railroad corporation to issue receiver's certificates and to make the lien thereof prior to all other liens on the property held by the receiver does not rest upon consent when the issue of such certificates is absolutely necessary for the preservation of the property as a going concern pending litigation. Such authority to issue receiver's certificates has been so long recognized by the courts that mortgage bondholders are presumed to have received their bonds with knowledge of, and acquiescence

in, such authority, but the authority to so issue receiver's certificates without the consent of persons and corporations having vested liens on the railway property should not be extended beyond such necessity. Such certificates should not be issued for ulterior purposes, or when not absolutely necessary for the preservation of the property as a going concern pending litigation, at least, without the express or constructive consent of the persons and corporations having vested interests in the property so held by the receiver.

APPEAL by the Attorney-General of the State of New York and another, from an order of the Supreme Court, made at the Otsego Special Term and entered in the office of the clerk of the county of Otsego on the 31st day of July, 1903, as resettled by an order entered in said clerk's office on the 21st day of August, 1903, authorizing the receiver of the defendant railway company to issue certificates not to exceed in amount $35,000 for the payment of interest on certain mortgage bonds of said company.

The action was brought July 2, 1903, to sequestrate the property of the defendant railroad company. A receiver was appointed July 4, 1903.

*John Cunneen, Attorney-General, Henry W. Bean* and *Frank H. Platt,* for the appellant, the attorney-general of the State of New York.

*Julien T. Davies, Charles E. Hotchkiss* and *Charles K. Allen,* for the appellant Knickerbocker Trust Company.

*Arthur M. Sanders, Alva Seybolt* and *A. Raymond Gibbs,* for the respondents.

CHASE, J.:

The facts relating to the receivership appear in an opinion written by this court on an appeal from another order made in this case. (*Townsend* v. *O., C. & R. S. R. Co.,* 86 App. Div. 604; 83 N. Y. Supp. 1034.) On May 1, 1902, the railway company executed and delivered a mortgage as a first lien on all its property, real and personal, and all property, real and personal, which it might thereafter purchase or acquire, to the Knickerbocker Trust Company, in trust for the benefit and security of all persons or corporations who should become the owners or lawful holders of any of 1,500 bonds of

$1,000 each, to be issued by said railway company pursuant to the provisions of said mortgage. Thirteen hundred and sixty-four bonds have been issued pursuant to the terms of said mortgage and are now outstanding. Said bonds are coupon bonds dated May 1, 1902, payable May 1, 1942, with interest at five per cent per annum, payable semi-annually, at the office of said Knickerbocker Trust Company. Said mortgage provides that in case the railway company shall fail to pay interest on any of said bonds at the time when the same shall become due and payable and shall continue in said default for ninety days that then and thereupon the principal of the bonds secured by said mortgage shall be and become immediately due and payable if the trustee shall give written notice to the railway company of its option to that effect. On May 1, 1903, there were 1,304 bonds outstanding, and the interest coupons hereon for May 1, 1903, were not paid. On the 27th day of June 1, 1903, an action was commenced by said trust company for the foreclosure of said mortgage by reason of the default in paying said coupons due May 1, 1903. Said action was commenced in New York county, and an application was made in that county for the appointment of a receiver of the mortgaged property. A hearing was had on such application July 1, 1903. On July 7, 1903, the court referred the motion to the Special Term to be held in Otsego county. (*Knickerbocker Trust Co.* v. *O., C. & R. S. R. Co.*, 41 Misc. Rep. 204.) A hearing was had on the motion in the sixth judicial district at the Delaware Special Term July 9, 1903, and the court held that it had no jurisdiction to hear the motion. An order was then made changing the place of trial of the action to Otsego county and a further order was entered July 13, 1903, discontinuing the action, and the plaintiff therein paid to the attorney of the railway company his costs in said action. On the 14th day of July, 1903, said trust company brought another action to foreclose the mortgage by reason of said default, laying the venue thereof in Herkimer county. Said actions of foreclosure were brought by said trust company at the request and direction of one Nichols and one Burnet, the alleged owners of 710 of the bonds so issued by said railway company ; and they have also requested said trust company to take all possible steps to procure the appointment of a receiver of the mortgaged property and to protect the priority

of the lien of the said bonds. It is claimed by the receiver of said railway company that said Nichols and Burnet are not the owners of said bonds or of any of them, and on July fourteenth, but after the last foreclosure action had been commenced, an action was commenced by said receiver against said Nichols and Burnet and others, including said trust company, to recover said bonds, and an injunction was obtained in said action restraining the defendants from selling or transferring said bonds and ordering said trust company to " refrain from prosecuting the action already brought to foreclose said mortgage and refrain from taking any and all other suits, actions or proceedings, and from taking possession of the property of said railway company and from offering said property for sale." Subsequently the receiver was directed to give an undertaking of $40,000 with sufficient sureties conditioned that he would pay all costs and damages to the defendants and each of them in case it was finally determined that he was not entitled to the injunction, and he gave the undertaking as so directed. The receiver of said railway company then made application to the court for leave to issue receiver's certificates for various purposes set forth in his petition therefor, including the payment to said trust company of the interest on said 1,304 bonds upon which interest became due on the 1st day of May, 1903, and has not been paid. The court after hearing counsel for the Attorney-General, said trust company, and said Nichols and Burnet in opposition thereto, made an order " that said receiver be and he is hereby authorized to pay the interest which fell due on May 1, 1903, on the 1,304 bonds of said railway company issued prior to that date out of the earnings of said company after deducting the operating expenses of said railway and expenses of the receivership, and if such earnings be insufficient therefor, then that he be, and he hereby is authorized to borrow temporarily such sum as may be necessary therefor, and to pay the fees and expenses of said trustee incurred in its suit brought to foreclose for said interest, not to exceed the sum of thirty-five thousand dollars, thereby to prevent a default, to prevent the trustee from declaring the whole principal sum to be due and a consequent foreclosure for such principal and loss to the stockholders and creditors of said company." Said order also provided the form of the receiver's certificates which included a provision that

the same were payable with interest at six per cent per annum payable semi-annually and that failure to pay interest for one month would make the principal due at the option of the holder; and said order further provided " that such certificates or debentures shall be and they are hereby adjudged to be a lien for principal and interest thereof on the lands, premises, franchises and property of every nature and description, and the earnings of the railway company after deducting the operating expenses and expenses of the receivership, prior to all other liens and claims thereon whatsoever except such other certificates, if any, as such receiver may hereafter get leave to issue, and as to such other certificates those hereby authorized shall be of equal lien." And said order also provided that in case of failure to pay the interest on said certificates or the principal thereof as in said certificates provided that " any holder or any number of holders thereof may institute a suit in foreclosure, in his or their names in behalf of himself or themselves and all others, the holders of said debenture certificates, to enforce the lien and the payment thereof." The receiver's application for leave to issue certificates for other purposes was denied. By the petition of the receiver for leave to issue said certificates it appears " that the operating expenses of said railway are about equal to its income from passengers and freight carried, and hence he is without funds to make any improvements to the track which are needed to enable the cars to travel more rapidly, and is without funds to purchase any rolling stock or equipment, and is without funds for all purposes of his trust, other than bare operating expenses, and he asks permission of the court to issue and sell receiver's certificates, to get funds for such purposes, such certificates to be in usual form and a lien on said property superior to that of the bonded indebtedness as hereinafter particularly set forth."

It thus appears that a temporary receiver, having in his possession the property of a street railway corporation, the operating expenses of which about equals its income and without having any funds in his hands for the purposes of his trust other than for bare operating expenses, and without producing any proof or even suggesting to the court that a larger income can reasonably be expected in the near future from which temporary repairs, taxes and the fixed charges for interest can be paid, is allowed, in opposition to the objections of

the trustee for the mortgage bondholders, to issue certificates to pay past due interest on the first mortgage bonds, and such certificates are made a prior lien on all the railway property. Only one reason was urged therefor, and that was that if it was not done the principal of the mortgage debt might under the terms of the mortgage be declared due. The purpose of appointing a receiver in sequestration proceedings is to provide for a just and fair distribution of the property of the corporation and of the proceeds thereof among its fair and honest creditors in the order and in the proportions prescribed by law in case of the voluntary dissolution of a corporation. (Code Civ. Proc. § 1793.) A sequestration action is said to be simply a summary mode of compelling the application of the property of a corporation, which has allowed an execution to be returned unsatisfied, to the payment of its debts. (*Mann* v. *Pentz*, 3 N. Y. 415.) The jurisdiction of the court to appoint receivers of property has for its primary object the care and custody of the property which is the subject of the receivership pending the determination of the questions involved in the litigation, and to enable the court by placing the property under the control of its officer to preserve it to answer the final decree which may be made in the action. (*Vilas* v. *Page*, 106 N. Y. 439.) The mortgagees' right to declare the principal of the mortgage debt due on default is a part of the contract entered into between the mortgagor and mortgagee, and the right to be heard in the control of the mortgaged property in case of default is a part of the security given to the bondholders by the terms of the mortgage itself. The commencement of an action to foreclose the mortgage would not affect the property of the railway company as a fund to be justly and fairly distributed among its honest creditors. The property would continue in the custody of the court, and it would determine whether the receivership already existing should be extended to the foreclosure action, or whether another person should be named as receiver therein. If, as appears in *Lloyd* v. *Chesapeake, O. & S. W. R. Co.* (65 Fed. Rep. 351), the net earnings of the road were amply sufficient to pay interest on the mortgage bonds, perhaps the court should authorize the receiver to pay such interest out of such net earnings, or even to issue certificates to raise the amount thereof in anticipation of such net earnings; but where it affirmatively

appears that the receiver is wholly without funds for all of the purposes of his trust other than the bare operating expenses of the railroad, and no evidence is presented to the court to show that the net earnings of the road in the near future will be amply sufficient to pay such interest, the right of the first mortgage bondholders to be heard in the control and management of the receivership should not be impaired by borrowing money to pay their interest on certificates that must ultimately be paid from the proceeds of the railway property prior to the mortgage debt.

One of the purposes of a receiver of a railroad corporation is to manage and operate the property and maintain its integrity as a road and as a going business. " The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept, but if perishable it must be sold by way of preservation. A railroad and its appurtenances is a peculiar species of property. Not only will its structures deteriorate and decay and perish if not cared for and kept up, but its business and good will will pass away if it is not run and kept in good order. Moreover, a railroad is a matter of public concern. The franchises and rights of the corporation which constructed it were given not merely for private gain to the corporators, but to furnish a public highway, and all persons who deal with the corporation as creditors or holders of its obligations must necessarily be held to do so in the view that, if it falls into insolvency and its affairs come into a court of equity for adjustment involving the transfer of its franchises and property by a sale into other hands to have the purposes of its creation still carried out, the court while in charge of the property has the power, and under some circumstances it may be its duty to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public." (*Union Trust Co.* v. *Illinois Midland Co.*, 117 U. S. 434.)

" The reason of the rule is to be found in the character of *quasi* public corporations. The assumption and control by a court through a receiver of a railroad devolves upon that court a duty to the public in the continued operation of the road. In the performance of that duty the court has undoubted power to authorize its receiver to con-

tract for the employment of labor and the furnishing of material, supplies and all things necessary for the operation of the road. The power of the court is not dependent upon who is or may become the ultimate owner, or who has vested liens against the property, or when and at whose instance the receivership is created. Its execution requires a means of paying the debts thus contracted. Those means are, *first*, the revenues derived from the operation of the road, and, *second*, the property of the railroad if the revenues prove insufficient. It must be assumed that the holders of vested liens upon railroad property have taken them subject to the exercise of this power by the court." (Gluck & Becker Receivers of Corporations [2d ed.], 142.)

" The power of a court of equity to appoint receivers of corporate property, as, for example, a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment before the first mortgage bonds, cannot be disputed. It is a part of that jurisdiction always exercised by the court by which it is its duty to protect and preserve the trust funds in its hands. It is, undoubtedly, a power to be exercised with great caution ; and, if possible, with the consent or acquiescence of the parties interested in the fund." (Gluck & Becker Receivers of Corporations [2d ed.], 120 ; Beach Receivers, §§ 326, 366, 380 ; *Wallace* v. *Loomis*, 97 U. S. 146.)

" The power of a court of equity to authorize receivers' certificates is derived from its duty to protect and preserve the trust property in its hands, and should be exercised only in cases where the creation of such liens is absolutely necessary for the preservation of the property pending litigation, and in all cases, if possible, with the consent or acquiescence of the parties interested in the fund. The power to authorize certificates is, therefore, one to be sparingly exercised, and when exercised the order of the court should be strictly construed." (24 Am. & Eng. Ency. of Law [2d ed.], 39.)

*Brown* v. *N. Y. & Erie R. R. Co.* (22 How. Pr. 451) was an action brought by the trustees of the third, fourth and fifth mortgage bondholders. A receiver was appointed in the action and an application was made for leave to pay the interest coming due on the fourth

mortgage bonds out of the receipts of the road, upon the ground that the bonds would become due and payable if the interest was not paid. The court say : " I see no propriety in granting this motion. The receiver was appointed to protect the rights of the prior bond-holders as well as those interested under the 4th mortgage. In point of priority those having the first claims are entitled to payment out of these moneys before the holders of the 4th mortgage bonds, and I know of no rule of law or equity which allows the funds of an insolvent corporation to be diverted from a proper application of them because it may be deemed expedient for ulterior purposes to make such a use of them. It is said that these bonds will at once become payable in full unless the interest is paid ; but such a result would not authorize a misapplication of the funds received by the receiver."

In *Morgan's Company v. Texas Central Railway* (137 U. S. 171) the Texas company had executed a mortgage to the Farmers' Loan and Trust Company, as trustee, to secure the payment of certain bonds. A foreclosure action was brought and the property sold. The Morgan Company claimed certain sums which its predecessor in interest had advanced to the Texas company during the receivership, and which were used to pay interest on the mortgage indebtedness to forestall foreclosure and to prevent the intervention of the trustee of the mortgage in the receivership. The Morgan Company claimed, upon distribution, a priority in respect to these sums over the bondholders whose interest had thus been paid. The court say : " It is true that a railroad company is a corporation operating a public highway, but it does not follow that the discharge of its public, excuses it from amenability for its private obligations. If it cannot keep up and maintain its road in a suitable condition and perform the public service for which it was endowed with its faculties and franchises, it must give way to those who can. Its bonds cannot be confiscated because it lacks self-sustaining ability. To allow another corporation which, for its own purposes, has kept a railroad in operation in the hands of the original company, by enabling it to prevent those who would otherwise be entitled to take it from doing so, a preference in reimbursement over the latter on the ground of superiority of equity would be to permit the speculative action of third parties to defeat contract

obligations and to concede a power over the property of others which even governmental sovereignty cannot exercise without limitation. And if all these advances should be considered as applied in payment of the operating expenses only upon the theory where such was not literally the fact, that they supplied a deficit created by the payment of interest out of the gross earnings, the same remarks would be applicable."

It is said in Beach on Receivers (§ 379): "Within the past twelve or fifteen years these certificates to the amount of many millions of dollars have been issued, and the courts are constantly authorizing the further issue of them, ostensibly for the preservation of the property and in the interest of the bondholders, but it is believed in a majority of the cases in which they are issued, to the hindrance and delay of a prompt foreclosure, to the impairment of the bondholders' security and to the scandal of the courts of equity."

" The lien of a mortgagee once legally established cannot be displaced without his consent or by the legal operations of some acts on his part, which estops him from asserting the superiority of his incumbrance. It is the duty of a court of equity, when it has assumed the control and management of mortgaged property *pendente lite*, to protect the rights of all parties having liens thereon, and to preserve the order of their priority as established by law. The governing principles upon which priority of lien on property is based and preserved are the vested rights of the creditor which he has acquired, and they are as sacred as any other right of property, and cannot be invaded or displaced in favor of a subsequent creditor." (*Metropolitan Trust Co.* v. *Tonawanda R. R. Co.*, 40 Hun, 86.)

The authority of the court to authorize a receiver of a railroad corporation to issue receiver's certificates and to make the lien thereof prior to all other liens on the property held by the receiver does not rest upon consent when the issue of such certificates is absolutely necessary for the preservation of the property as a going concern pending litigation. Such authority to issue receiver's certificates has been so long recognized by the courts that mortgage bondholders are presumed to have received their bonds with knowledge of, and acquiescence in, such authority, but the authority to so issue receiver's certificates without the consent of persons and corporations having vested liens on the railway property should not be extended beyond

such necessity.   Such certificates should not be issued for ulterior purposes, or when not absolutely necessary for the preservation of the property as a going concern pending litigation, at least, without the express or constructive consent of the persons and corporations having vested interests in the property so held by the receiver.

The facts before the court in this case were not sufficient to authorize the issue of such certificates against the objections of the trustee for the mortgage bondholders and the holders of the legal title to a majority of said bonds.   The order should not have been granted.

We must assume that the court, in the final distribution of the proceeds of the corporate property, will take into account and give due weight to all enforcible equities existing between the persons or corporations before the court on such distribution, including such equities, if any, as arise by reason of anything that occurs after the granting of the order appealed from or which may exist by reason of the decision of actions now pending.

The order should be reversed, with ten dollars costs and disbursements.

All concurred.

Order reversed, with ten dollars costs and disbursements.