(122 App. Div. 193.)

### ROCHESTER TRUST & SAFE DEPOSIT CO. v. ONEONTA & M. V. R. CO. et al.

(Supreme Court, Appellate Division, Third Department. November 13, 1907.)

1. RECEIVERS—RECEIVER'S CERTIFICATES—FORECLOSURE—PARTIES.

Where, pending an action to foreclose receiver's certificates issued by a receiver appointed in sequestration proceedings against a corporation, an action was commenced to foreclose a mortgage on the corporate property, and the same was sold thereunder subject to the claims, if any, on the certificates, and the proceeds of the sale went to the holders of the bonds secured by the mortgage, it was a matter of interest only to the one claiming under the purchaser at the mortgage foreclosure sale whether the certificates were adjudged valid and a lien on the property.

2. SAME—DEFENSES AGAINST RECEIVER'S CERTIFICATES.

The purchaser of corporate property at a mortgage foreclosure sale, subject to the claims, if any, on receiver's certificates issued by a receiver appointed in sequestration proceedings against the corporation, may avail itself of any defense to the certificates which the holders of the bonds secured by the mortgage could have asserted, and of those defenses only.

3. SAME—PLEADING—SUFFICIENCY.

Where, in an action to foreclose receiver's certificates issued by a receiver appointed in sequestration proceedings against a corporation, there was no allegation that holders of bonds of the corporation secured by a mortgage on the property were estopped from questioning the validity of the certificates, in that they had consented to their issuance, such defense was not available.

4. CORPORATIONS—RECEIVER IN SEQUESTRATION PROCEEDINGS—POWERS AND DUTIES.

The power and duty of a receiver of a corporation, appointed under Code Civ. Proc. § 1788, to "preserve the property," is no less in sequestration proceedings than in foreclosure.

5. RECEIVERS—ORDER DIRECTING ISSUANCE OF RECEIVER'S CERTIFICATES—CONCLUSIVENESS.

Where holders of corporate bonds secured by a mortgage were parties to a proceeding wherein a receiver, appointed in sequestration proceedings against the corporation, was directed to issue receiver's certificates and the same were declared to be a lien prior to all other liens, and the bondholders in effect joined in the application for their issuance, such determination was res judicata, in all collateral proceedings, as to the neces-

sity of their issuance and their propriety, notwithstanding the bond-.
holders were not parties to the sequestration proceedings.

6. SAME—PURPOSES OF ISSUE OF CERTIFICATES—COMPLETION OF RAILROAD.

A receiver of a trolley railroad may be authorized to issue receiver's:
certificates, which shall be a lien prior to all other liens, for the final com-
pletion of an extension of the railroad.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 204,.
206.]

7. SAME—CONSENT OF PARTIES INTERESTED—CONSENT OF TRUSTEE TO MORTGAGE.

Notice to the trustee under a corporate mortgage securing bonds of an.
application for the issuance of receiver's certificates by a receiver appoint-
ed in sequestration proceedings against the corporation, and consent there-
to by the trustee, are binding on the bondholders.

8. RAILROADS—MORTGAGES—POWER OF TRUSTEE TO BIND BONDHOLDERS.

In cases of railroad mortgages, where the court has a double duty in
respect of property taken into its possession, the duty to creditors and the
duty to the public, the trustee under the mortgage represents the bond-
holders secured thereby for the purpose of any application by a receiver
of the corporation for direction in the execution of his trust, in whatever
proceedings the receiver was appointed, and whether the trustee was or
was not originally a party to such proceeding.

9. RECEIVERS—ACTION TO FORECLOSE RECEIVER'S CERTIFICATES—APPLICATION
TO PROCEEDS OF CERTIFICATES.

In an action to foreclose receiver's certificates issued by a receiver ap-
pointed in sequestration proceedings against a corporation, the holder of
the certificates need not show the application of the proceeds thereof.

10. SAME—DEFENSES.

Where claims to which the proceeds of receiver's certificates issued by
a receiver appointed in sequestration proceedings against a corporation
were directed to be applied were prior to the claims of holders of bonds-
of the corporation secured by a mortgage, it would be inequitable to permit
the bondholders to object to their allowance after receiving the proceeds-
of a sale under the mortgage, without diminution by reason thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 216,.
218.]

Appeal from Special Term, Otsego County.

Action by the Rochester Trust & Safe Deposit Company against
the Oneonta & Mohawk Valley Railroad Company and others to fore-
close receiver's certificates as a first lien upon the railroad property.
From a judgment declaring the certificates legally issued and directing;
a sale for the payment thereof, defendants appeal. Affirmed.

In 1898 there existed a trolley railroad running from Oneonta to West
Oneonta, in the county of Otsego. This railroad was owned by a corporation
known as the Oneonta & Otsego Valley Railroad Company. The line was
thereafter extended to Cooperstown, and thence to Richfield Springs. The for-
mer company was in some way merged into a company known as the Oneonta,.
Cooperstown & Richfield Springs Railway Company, organized in 1902. A
further extension from Richfield Springs northward to the village of Mohawk
was in process of construction at the time of the issuance of the receiver's
.certificates hereinafter referred to. At the time of the construction of the-
extension of the road to Cooperstown and Richfield Springs, bonds were is-
sued by the Oneonta, Cooperstown & Richfield Springs Company, secured by
a mortgage. These numbered 1,500, and were for $1,000 each. The Knicker-
bocker Trust Company of New York was the trustee of the mortgage. Of these-
bonds 1,364 only were issued. In 1903 one Lucius H. Townsend purchased a
judgment against the defendant for $470.84. Execution was returned unsatis-
fied, and an action was brought by him for a sequestration of the property of
the corporation. Herbert T. Jennings was appointed temporary receiver in.

the sequestration action. Thereafter, and on the 19th of March, 1904, Myron A. McKee was appointed co-receiver with Jennings.

Upon the 10th day of February, 1904, at a Special Term held in Canastota before Mr. Justice Forbes, an order was entered which provided for the issuance, by said Jennings as receiver, of receiver's certificates to the amount of $250,000. It was provided that the proceeds of said certificates should be applied "to the completion of the extension of said railway from Richfield Springs to Mohawk, the improvement, betterment, and equipment of the railway property, and the payment of the receiver's fees and expenses, including fees and expenses of his attorneys and counsel, and the payment of the fees and allowance of the Knickerbocker Trust Company, as trustee under the railway company's mortgage in the litigations mentioned in said settlement agreement. * * * " It was further ordered that the said certificates be made a lien upon the said property prior to all liens and claims thereon whatsoever, and that for failure to pay interest the holders of the certificates might declare the full amount due and bring action to foreclose the same.

These certificates were afterwards purchased by this plaintiff, who purchased about $50,000 from other holders, and the balance from the receiver himself, and the face value thereof was duly paid by the plaintiff. The Special Term has found that the moneys so received were applied according to the terms of said order, with the exception of between $4,000 and $5,000, which are now in the bank to the credit of said receiver.

In August, 1904, after a default had been made for 90 days in payment of interest upon said certificates, and after the plaintiff had elected to declare the whole amount due, an action was brought to foreclose the said certificates as a first lien upon said property and for the payment thereof. In that action no personal judgment was demanded against any one. Pending that action the Knickerbocker Trust Company commenced an action to foreclose its mortgage. In that action Henry B. Coman was appointed temporary receiver. That action was prosecuted to judgment, and the property sold thereunder and purchased by one Henry W. Bean for the sum of $960,000. Under the terms of the sale and by the terms of the deed to said Bean, the property was sold "subject to the claim, if any, upon the receiver's certificates theretofore issued by said Herbert T. Jennings and Myron A. McKee, or either or both of them, pursuant to the order set forth in paragraph 7 of the complaint." Thereafter the defendant, the Oneonta & Mohawk Valley Railroad Company, purchased the said property from the said Bean.

Upon the application of the Oneonta & Mohawk Valley Railroad Company it was made a party to this action before judgment, and the complaint was deemed amended to state the facts leading up to the purchase and ownership of said property by said defendant. The said defendant answered, raising the principal issue in the case. The trial judge determined that these certificates were legally issued and directed a sale of the property for the payment thereof with costs. From the judgment so entered this appeal is taken. Further facts appear in the opinion.

Argued before SMITH, P. J., and CHESTER, KELLOGG, and COCHRANE, JJ.

McFarlane, Whitney & Monroe, for appellant Oneonta & M. V. R. Co.

Joseph G. Deane, for appellants Johnson Co. and others.

William N. Cogswell (James Breck Perkins, of counsel), for respondent.

SMITH, P. J. My conclusions in this case, briefly stated, are as follows:

First. The defendant the Oneonta & Mohawk Valley Railroad Company is the only party interested in this appeal. These certificates were not paid by the receiver. They were not directed to be paid from the proceeds of the sale. The full amount of such proceeds went

to the bondholders. The sale was made subject to the claims, if any, upon these certificates. It is a matter of interest, therefore, to the defendant railway company only whether these certificates be adjudged valid and a lien upon said property.

Second. When this action was brought the plaintiff had some right of action for reimbursement for the moneys paid. Before its conclusion the property had been sold to the defendant, subject to the claims under these certificates, if any. This sale and purchase itself constituted these certificates a lien, if the certificates were valid and enforceable obligations against the company. This is irrespective of any prior lien created by the order of February 10th. By the purchase, subject to the claims, if any, of the certificate holders, the defendant railroad company in no way admitted their validity, and is not estopped from questioning the same. It acquired by the sale the rights of the mortgagor and mortgagee. It may avail itself of any defense to the certificates which the bondholders could have asserted, and of those defenses only.

Third. This judgment cannot stand upon an estoppel against individual bondholders. There was considerable evidence introduced as to the consent to the issuance of the certificates and of the priority of their lien by a large majority of the bondholders, under a so-called voting trust agreement. There was evidence as to the written consents of still other bondholders who had not signed the so-called voting trust agreement. There was still further evidence as to the oral consent of other bondholders. From all of this the plaintiff claims that the bondholders have individually estopped themselves from questioning the validity of these certificates. However effective might be such proof, if the plaintiff had been in a position to present the same, no notice was given to the defendants by the plaintiff's pleading of an intention to stand upon any individual consents. This objection was explicitly and fully stated at the time the plaintiff offered the same in evidence. The defendants' objection was, however, overruled, and the evidence is in the case, without an amendment of pleading, over the defendants' objection and exception. I am of the opinion that the evidence was improperly admitted, and can form no basis upon which this judgment can stand.

Fourth. Plaintiff's judgment must stand, if at all, upon the validity and effect of the order of February 10th, authorizing the issuance of certificates and their priority of lien. In Anderson on Receivers, § 341, it is said:

"It is not true that the power of a court to authorize the issuance of receivers' certificates depends upon the consent of the parties to the litigation, or either of them. The public character of the property, the necessity to preserve and operate it properly and safely, give and demand the exercise of the power. It has been expressly declared that the exercise of this power does not depend on consent or on prior notice."

Upon this issue it is first objected by defendant that this receiver was appointed in sequestration proceedings with power limited by the statute. By the statute (section 1788 of Code of Civil Procedure) his power and duty is to "preserve the property." A receiver under foreclosure is given no greater power. In Anderson on Receivers, § 2. a

receiver is defined as an officer appointed by the court "to take possession of and preserve, pendente lite, and for the benefit of the party ultimately entitled to it, the fund or property in litigation. * * *" The extent of the receiver's power rests upon the construction of the word "preserve." The power and duty to "preserve the property" cannot differ, in whatsoever action or proceeding the receiver be appointed. Again it is objected that the order was improvidently made; that the completion of this road was not germane to the preservation of the property. If this were an open question, I should incline strongly to approve of the defendants' contention. The power to authorize construction should be most cautiously exercised, and should only be exercised when the cost is limited and the promise of return abundant. If objection had been made at Special Term, the order for the issuance of the certificates for this purpose would probably never have been made. It was granted, however, without objection on the part of the bondholders, in a proceeding to which they were parties, and in which they in effect joined in the application for their issuance. This determination was res adjudicata in all collateral proceedings upon the necessity of their issuance and their propriety. It cannot matter that the bondholders were not parties to the sequestration action. They were made parties to the proceeding in which the certificates were ordered. They have had their day in court. After being heard upon the application, and in effect joining therein, and not appealing from the order, they are in equity and law foreclosed from questioning the validity of the certificates in the hands of one who has advanced the moneys on the faith thereof which has gone to the betterment of their security. High on Receivers (3d Ed.) § 398f.

But appellants challenge my assertion that the bondholders have had notice of the application for the issuance of the certificates and consented thereto. That notice was given to the mortgage trustee, and it was he who consented. The challenge is well taken, unless the trustee represented the bondholders in that application.

It may be conceded at the start that, if there was no power under any circumstances to order certificates for the completion of the road, then the trustee had no authority to consent or to bind the bondholders on that application. But such a power had been recognized in several cases. In High on Receivers (3d Ed.) § 398d, it is said:

"No limit has been fixed to the purposes for which receivers' certificates may be issued, other than that they shall be germane to the objects of the receivership and necessary to the proper administration of the trust. Thus they have been authorized for the preservation, management, and repair of the road, and for the purchase of rolling stock; for the making of repairs only; for the further construction, equipment, and final completion of the road; to complete an unfinished portion of the road within the time fixed by law, and thus to prevent the lapsing of valuable land grants and franchises of the company. * * *"

In Bank of Montreal v. C., C. & W. R. R. Co., 48 Iowa, 518, the court had authorized the issuance of certificates for the "further construction, equipment, and final completion of the road." It was held in that case, under the wording of the order, that certificates could only be issued for materials after delivery, and not for materials only contracted for. In the opinion it is said:

107 N.Y.S.—16

"In construing the order it must be borne in mind it confers upon the receiver extraordinary and unusual powers, which, however, it will be assumed were necessary and proper for the preservation and protection of the property committed to his charge."

The court, therefore, was not without power to issue the certificates under some contingencies.

With the power to issue the certificates conceded under any circumstances, and the propriety of their issuance alone at issue, both upon principle and authority, notice to the mortgage trustee bound the bondholders. In some cases where the receiver was appointed in an action to foreclose the mortgage, it has been stated that the bondholders submitting their claims to equity impliedly consented to the issuance of certificates upon notice to their trustee. But in this only half the truth is told. Bondholders have been held bound by notice to their trustee, where the trustee has been brought into court as defendant in an action, where no consent can be implied from his presence in court. Kerrison v. Stewart, 93 U. S. 160, 23 L. Ed. 843. In that case, in writing of this rule, Chief Justice Waite says:

"The principle which underlies this rule has always been applied in proceedings relating to railway mortgages, where a trustee holds the security for the benefit of bondholders. It is not, as seems to be supposed by the counsel for the appellants, a new principle developed by the necessities of that class of cases, but an old one, long in use under analogous circumstances, and found to be well adapted to the protection of the rights of those interested in such securities, without subjecting litigants to unnecessary inconvenience."

But, were the rule not otherwise established, the necessities of this class of cases would give full warrant for its existence. When property of a railroad is taken by the court into its possession, the court has a double duty. It must conserve that property to the best interests of the creditors. It must also protect the public, which has the legal right to demand that the road be operated. To whatever is necessary to protect that public right the bondholders have impliedly consented. Their trustee has implied authority to represent them in any proceeding instituted for such purpose. Holders of a large issue of railroad bonds are numerous, and their names and residences wholly unascertainable. It is impossible to give to each one notice of each application by the receiver for direction in the execution of his trust. In the case at bar, suppose it had been necessary to issue certificates for the running of the road. The individual bondholders could not be ascertained, that notice might be given to them. Defendant contends that notice to the trustee is not binding, because it is not a party to the sequestration proceedings. The logical conclusion of defendants' contention is that in this case no certificates could have been directed for necessary running expenses which would not be subject to question by each bondholder, when the certificate holder sought to enforce his prior lien. Certificates thus burdened would have little value, if a sale were at all possible, and the court would find itself unable to fully execute its trust. The better and necessary rule is that in cases of railway mortgages, where the court has a double duty in respect of property taken into its possession, a duty to all the creditors and a duty to the public, the trustee represents the bondholders for the purpose of

any application by the receiver for direction in the execution of his trust in whatsoever proceeding the receiver has been appointed, and whether or not the trustee was originally a party to such proceeding. In this case the receiver made application for authority to issue these certificates, both for the purpose of maintenance of the property and to complete the extension from Richfield Springs to Mohawk, a distance of about 12 miles. Upon this extension the heavy work had been done, the bridges built, and the rails and ties partly placed. Of this application the Knickerbocker Trust Company was given notice. The trust company appeared and filed an affidavit of its vice president, in which it is stated:

"That there had been exhibited to said trust company an instrument in writing, purporting to be signed by the owners and holders of 1,110 bonds secured by said mortgage out of a total outstanding issue of 1,364, and that the said trust company believes that the persons signing said instrument as aforesaid are the owners and holders of the number of bonds set after their names respectively; that aforesaid instrument contains a consent on the part of each of the holders of said bonds to the making of an order authorizing the receiver heretofore appointed in this case to issue his certificates, to amount not exceeding $250,000, for the purposes expressed in the petition, such certificates to be a lien upon all the property and franchises of said railway company prior to the aforesaid mortgage; that the said assenting bonds constitute a very large majority of the bonds outstanding, and the said trustee knows of no person owning any other of the said bonds who has objected to the authorization of said certificates with a prior lien as aforesaid. None of the bonds secured by the said mortgage are registered, and the holders thereof have not left their addresses with the said trustee. In view of these facts, the said trustee submits to the jurisdiction of the court for such action in the premises as it may deem just and proper."

Thereupon the order was made for the issuance of said certificates and for their priority as a lien upon the property. This order has never been directly questioned, either by an appeal or by motion. The case of Hollister v. Stewart, 111 N. Y. 644, 19 N. E. 782, is cited as denying the power of the trustee to consent to the creation of a prior lien. In the opinion of Judge Finch in that case, it is stated:

"That thereafter the trustees, under the authority of the mortgage, solely and without judicial intervention took possession of the railroad and began to operate it, and eventually joined with the bondholders, outside of the plaintiff and the few others, in a plan of reorganization. * * *"

It would seem to be clear that, without express authority in the mortgage, trustees would not have the right to consent to the placing of a prior lien. The validity of this order of February 10th does not stand upon their consent alone. It stands upon the authority of the court to administer the property in its possession upon notice to them. If this order would be binding upon notice of the trustee, if the application were made by a receiver appointed in the foreclosure of the mortgage, I can see no reason for refusing to give it effect upon application by the receiver in sequestration proceedings. Under either receivership, the court takes the property in its possession, to administer for the interests of exactly the same parties. Its duty is the same in either case. Plaintiff by his purchase from the receiver stands in privity with him and can invoke the protection of this adjudication.

That plaintiff need not show the application of the proceeds of the

certificates is held in Union Trust Co. v. Ill. M. Co., 117 U. S. 435, 6 Sup. Ct. 809, 29 L. Ed. 963; Wesson v. Chapman, 77 Hun, 145, 28 N. Y. Supp. 431. The other claims to which the proceeds of the certificates were ·directed to be applied come prior to the claims of the ·bondholders. It would not be equitable to permit them to object to their allowance now, after receiving the proceeds of the sale, without diminution by reason thereof. Other objections have been made to the validity of this judgment, which have been examined and found untenable. The judgment should therefore be affirmed, with costs.

Judgment affirmed, with costs. All concur; KELLOGG, J., in result.