(Supreme Court, Appellate Division, Third Department.     May 4, 1910.)

1. RECEIVERS (§ 128*)—CERTIFICATES—PRIORITY.
    Where the court by order, set aside on appeal, authorized the receiver
on a railway corporation to issue certificates of indebtedness constituting
a first lien on the property of the corporation to pay past-due interest
of first mortgage bonds, and thereby prevent the bondholders from de-
claring the bonds due as authorized by the mortgage, the certificate hold-
ers could not be given priority over the bondholders who objected to the
issuance of the certificates, and who were forced to take the proceeds
thereof, and who thereby lost their right to declare the bonds due and
to foreclose the mortgage securing them, since the certificates could only
be regarded as unsecured advancements made under a mistake of law,
and since the certificate holders had no equitable claim as against the
bondholders who could not be placed in the position they were in when
forced to accept the proceeds of the certificates, and the remedy of the
certificate holders was against the receiver and the property he repre-
sented if sufficient for that purpose.
    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 219–222;
Dec. Dig. § 128.*]

2. PAYMENT (§ 84*)—RECOVERY—MISTAKE OF LAW.
    A court of equity does not grant relief for a mistake of law though
money has been received under a claim of right.
    [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 267–271; Dec.
Dig. § 84.*]

3. RECEIVERS (§ 128*)—CLAIM—PRIORITY.
    The trustee in a mortgage, executed by a railway corporation to se-
cure its bonds, and the bondholders objected to the appointment of a re-
ceiver of the corporation, and sought to supersede him by a receiver ap-
pointed in an action to foreclose the mortgage, but their effort was im-
properly defeated by the receiver. The trustee then instituted a proceed-
ing to remove the receiver, and, pending the proceeding, the receiver,
trustee, and some of the bondholders made an agreement for the opera-
tion of the railroad and for the raising of a sum not exceeding $250,000
secured by a prior lien. It was contemplated that the receiver should
operate the road out of the earnings except as such operating expenses
might be included in the $250,000. It was provided that the rights and
powers of the receiver should not be impaired. The court made an order
authorizing the receiver to issue certificates to the extent of $250,000, and
limited the use thereof to the purposes expressed in the agreement. *Held*,
that the bondholders, represented by the trustee who recognized and acted
on the agreement, limited the sum to $250,000 which should become
chargeable against the property of the corporation prior to the lien of
their bonds, and expenses incurred by the receiver in operating the road
not covered by the $250,000 had no priority over the lien of the bond-
holders.
    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 219–222; Dec.
Dig. § 128.*]

    Houghton, and Sewell, JJ., dissenting.

Appeal from Special Term, Otsego County.
Action by the Knickerbocker Trust Company against the Oneonta,
Cooperstown & Richfield Springs Railway Company and others.
From an order confirming a report of a referee determining that the
claims of Charles F. Shelland and others were entitled to priority over

the bonds of defendant named in payment thereof out of the proceeds of the sale of the property, the defendant Henry W. Bean and others, as committee of reorganization, appeal. Reversed.

See, also, 134 App. Div. 775, 119 N. Y. Supp. 304.

The Knickerbocker Trust Company foreclosed a mortgage covering the property of the Oneonta, Cooperstown & Richfield Springs Railway Company held by said trust company as trustee for the bondholders of the railway company. This action of foreclosure was commenced in 1905. Under the judgment therein the property of the railway company has been sold and said referee was appointed to determine the priority between the bondholders secured by such mortgage and certain claimants respondents herein as to payments out of the proceeds of said mortgaged property. The record does not disclose the purchaser at the foreclosure sale or the purchase price or the circumstances of the sale. On July 4, 1903, a temporary receiver of the railway company was appointed in an action by Lucius H. Townsend against said railway company to sequestrate its property. The mortgage in question was then in existence and the railway company was in default in the payment of interest coupons which had become due on May 1st 1903. The road continued its operation under the temporary receiver. On July 30th 1903, on application of the latter and against the objection of the Trust Company an order was made by this court at a special term thereof authorizing the said receiver "to pay the interest which fell due on May 1, 1903" on the bonds, out of the earnings of the company after deducting the operating expenses of such railway and expenses of the receivership and if such earnings were insufficient therefor then to borrow temporarily such sum as might be necessary not to exceed $35,000, "thereby (as stated in the order) to prevent a default and prevent the trustee from declaring the whole principal sum to be due, and a consequent foreclosure for such principal and loss to the stockholders and creditors of said company." Said order provided that receiver's certificates might be issued for the sum so to be raised and that such certificates should be a first lien on all the property of the railway company prior to all other liens and claims thereon. The receiver immediately issued his certificates for the full amount thus authorized of $35,000, and the same having been negotiated the proceeds thereof were used on or about August 1, 1903, to extinguish the interest due on the bonds May 1, 1903, except the sum of $2,063.28 which was not needed for that purpose, and which was used by the receiver in operating the road. The trustee at the time of the payment of such interest had instituted an action for the foreclosure of the mortgage in which action it was sought to procure the appointment of a receiver for the benefit of the bondholders. Under the terms of the mortgage the trustee was at liberty to declare the principal thereof due after default for 90 days in the payment of the interest. When the interest coupons were paid such action was discontinued. An appeal was taken to this court from the order of July 30, 1903, authorizing the receiver to issue such certificates, and the order was reversed, the court holding that the certificates were unauthorized. See Townsend v. Oneonta, Cooperstown & Richfield Springs Railway Company, 88 App. Div. 208, 84 N. Y. Supp. 427. The opinion in that case sets forth more fully the facts relating to said receivership and receivership certificates and the trust mortgage. Holders of those certificates constitute one class of respondents herein whose claims have been awarded priority over the bondholders in payment out of the proceeds of the sale of the railway property. At the time of the appointment of the temporary receiver, an extension of the railroad was under construction from Richfield Springs to Mohawk. In January, 1904, a so-called voting trust agreement was made between the railway company, certain of the bondholders, the receiver, and certain specified trustees. The general purposes of such agreement were therein expressed as follows: "(1) To adopt and enforce a policy for the management and operation of the railway company during the life of this agreement. (2) To make, execute, and deliver contracts for the completion of the extension of said railway from Richfield Springs to Mohawk. (3) To make, execute and deliver contracts for the improvement, betterment and equipment of the railway

property. (4) To pay the fees and expenses of the receivership, including attorneys' and counsel fees, and including the fees and allowance in pending litigations of the Knickerbocker Trust Company as trustee under the mortgage, as the same may be audited by the voting trustees and allowed by the court. (5) To raise money for the purposes above enumerated, and for those purposes the power to create a new prior lien on the railway property; but such new prior lien shall not exceed the sum of two hundred and fifty thousand dollars ($250,000), unless the bondholders, parties to this agreement, shall consent in writing to the creation of a new prior lien of a larger amount." At the time of making such agreement a proceeding was pending by the trust company against the receiver for his removal, which proceeding was thereupon discontinued. An order of the court was made February 10, 1904, based on such voting trust agreement authorizing the receiver to issue his certificates to the extent of $250,000, and limiting the use which was to be made thereof to the purposes expressed in said agreement. Such certificates were issued and negotiated for the full amount thereof, and with the proceeds thereof and with the earnings of the road the said temporary receiver appointed in said sequestration action together with a co-receiver appointed March 20, 1904, continued the operation of the road and the continuance of the construction of its extension from Richfield Springs to Mohawk until June 1, 1905, when the management and control of the railway and its property were turned over to a receiver appointed in the action to foreclose the trust mortgage which was instituted in that year. The effect of those certificates was before this court in an action by Rochester Safe & Trust Deposit Company v. Oneonta, Cooperstown & Richfield Springs Railway Company, 122 App. Div. 193, 107 N. Y. Supp. 237, to have them declared a lien upon the railway property. The receivers in the sequestration action have incurred expenses in the operation of the road not covered by said voting trust agreement or certificates amounting to $25,471.84. The owners of these latter claims have also been awarded priority over the bondholders in the payment of the proceeds of the mortgaged property, and constitute the second class of respondents herein.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Ralph W. Gwinn, for appellants.

Henry C. Henderson, for respondents.

COCHRANE, J. First. Notwithstanding the determination of this court in Townsend v. Oneonta, Cooperstown & Richfield Springs Railway Company, 88 App. Div. 208, 84 N. Y. Supp. 427, that the order authorizing the receiver to issue his certificates for $35,000 was erroneous, and that such certificates were unlawfully issued, it is nevertheless urged by the holders thereof that on equitable principles they should be allowed payment thereof in preference to the bondholders, on the theory that the latter have in fact received the avails of such certificates. When the claimants purchased those certificates they knew, or by the exercise of reasonable prudence should have known, that the order of the court which authorized them was subject to review and liable to reversal. They cannot be regarded in any more favorable light as against the bondholders than if they had loaned their money to the receiver on his individual responsibility, and he had used the same to extinguish the interest coupons.

In Union Trust Company of New York v. Monticello & Port Jervis Railway Company, 63 N. Y. 311, 20 Am. Rep. 541, it appeared that one Smith had agreed with the president of the railway company and the trustee of the mortgage bondholders to advance the money to pay

certain interest coupons and to hold the coupons for his security for the money advanced. The bondholders knew nothing of this arrangement, and supposed, when they received the money and delivered up the coupons, that they were paid. On the distribution of the proceeds arising from a sale of the railway·property Smith claimed to share in the funds pro rata with the bondholders. The court said:

"Here the holders of the coupons did not agree to assign or transfer them to Smith, and did not in fact do so. When they delivered these coupons to the trust company they supposed they were receiving payment of them, and Smith undoubtedly knew this. He, however, intended to take and hold them, and keep them in being as his security for the money advanced. This he could do as against the railway company; and as against it the mortgage could be enforced for his benefit. It had not paid the coupons, was in no way harmed by their payment by Smith, and he advanced the money for its benefit upon the request of its principal officer. But a different rule applies as between Smith and the bondholders. They had a direct interest in having the coupons paid, so as to preserve the value of their security. They delivered them up to the trust company for payment, and supposed they were paid. If they had known the true state of the case, they might, and probably would, have refused to assign the coupons, and to have them kept in life, and thus, by an accumulation of interest, to have impaired the value of their security. And they could have caused a foreclosure of the mortgage for default in the payment of the interest. * * * The bondholders did not agree that Smith should take and hold the coupons, and they did not agree that he should have any interest in the mortgage security. To give him the benefit of the security would now be detrimental to them, and as between them and him would be inequitable."

The position of Smith in that case was certainly as favorable as that of the certificate holders here. He had an express agreement with both the railway company and the trustee that he was to hold the coupons as security. Here there was no such agreement, but the certificate holders relied exclusively on an order of the court which erroneously declared the priority of their certificates. That order expressly stated that the receiver was *"to pay the interest."* There was no expectation on the part of the bondholders, the receiver, or the certificate holders that the coupons were to be transferred or held as security or to be treated in any other way than as extinguished.

In Morgan's Louisiana & Texas Railroad & Steamship Company v. Texas Central Railway Company, 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, it appeared that the Houston Company, under which plaintiff claimed, had made advancements to the defendant railway corporation to be used for operating expenses and other necessary expenditures and to be repaid out of the earnings of the railway. The defendant company had used a portion of said earnings for the payment of coupons of its mortgage bonds although the holders thereof were only entitled to receive payment after the defendant had paid the amounts advanced as aforesaid. It was claimed that the plaintiff was entitled to stand in the place and stead of said mortgage creditors for the amounts received. Chief Justice Fuller writing for the court said:

"It appears that the gross earnings were each year sufficient to pay the operating expenses and taxes, and that the deficit of each year was produced by the payment of interest on the bonded debt. But if the advances could therefore be treated as having been specifically procured for, or specifically

applied to, the payment of interest as such (although there is no evidence to that effect), still such payment would afford no basis for the assertion of a preference as against the bondholders. So far as disclosed, the interest coupons were paid, not purchased (Ketchum v. Duncan, 96 U. S. 659 [24 L. Ed. 868]; Wood v. Guarantee T. & S. D. Co., 128 U. S. 416 [9 Sup. Ct. 131, 32 L. Ed. 472]), and cannot be set up as outstanding; and the contention is wholly inadmissible that the bondholders, because they received what was due them, should be held to have assented to the running of the road at the risk of returning the money thus paid, if the company, by reason of unrealized expectations on the part of those who made the advances, should ultimately turn out to be insolvent and unable to go on. By the payment of interest, the interposition of the bondholders was averted. They could not take possession of the property, and should not be charged with the responsibility of its operation."

It thus appears on well-settled authority that the claims of the certificate holders, regarding them as they must be regarded, as merely unsecured advancements to the receiver, cannot be given priority over the bondholders. But viewing these certificates in any aspect whatever, it is difficult to see what equitable claim they have to priority over the bonds. It is urged that the bondholders should have returned the money, and that not having done so they are estopped from repudiating the certificates. They resisted the certificates and took the money not voluntarily, but because it was forced upon them, and by reason thereof lost their right to foreclose their mortgage and to declare the full amount of principal due. They also lost their right to have a receiver appointed who might have superseded the receiver in the sequestration action. When the validity of those certificates was before this court in the Townsend Case, 88 App. Div. 208, 84 N. Y. Supp. 427, it was said:

"The mortgagee's right to declare the principal of the mortgage debt due on default is a part of the contract entered into between the mortgagor and mortgagee, and the right to be heard in the control of the mortgaged property in case of default is a part of the security given to the bondholders by the terms of the mortgage itself."

A return of the money would have been to their prejudice. They could not place themselves in the position in which they were when it was forced upon them. Their status in regard to the litigation and in respect to the receivership was radically changed. The time of payment of their mortgage was postponed. Other interest accumulated in the place of what had been paid. The receivership in the sequestration action was protracted, and it is impossible to see in what particular or to what extent their rights have been affected. Under such circumstances very clearly they were not required to restore what they had received. These claimants may have some remedy against the receiver and the property which he represents if there be sufficient in his hands for that purpose. But whatever the remedy may be it does not extend to the displacement of the mortgage security or affect the contract rights of the bondholders under such mortgage.

Particular stress is placed on the fact that the certificate holders relied on the order of the court. I have attempted to demonstrate that they took their chances of a reversal of this order and that such order erroneously granted resulted in placing the bondholders at a disadvantage in respect to the pending litigation. Irrespective, how-

ever, of all other considerations heretofore advanced it seems to me that a complete answer to the claim of the certificate holders is that their reliance on the order of the court was nothing more or less than a mistake of law and nothing is better settled than that a court of equity does not grant relief for such a mistake even where money has been received under a claim of right. Jacobs v. Morange, 47 N. Y. 57; Doll v. Earle, 59 N. Y. 638; Newburgh Savings Bank v. Town of Woodbury and Others, 173 N. Y. 55, 65 N. E. 858, and cases there cited. In the latter case plaintiff had purchased bonds of a town issued under a statute subsequently declared unconstitutional, the proceeds of which bonds pursuant to such statute had been paid over to men drafted into the military service of the United States. After the law had been declared unconstitutional plaintiff brought the action against the drafted men to recover the amount which had been advanced by plaintiff to the town on its bonds and the proceeds of which had been paid over by the town to such drafted men. The court said:

"The two drafted men who appealed from the judgment had no contract relations with the plaintiff; they owed to it no duty, express or implied. There is no privity between them and the plaintiff. The plaintiff did not pay to them any money at any time. What the plaintiff did was to loan money to a municipal corporation on void securities which the plaintiff could recover so long as it remained under the control of the borrower, but when the town in this case disbursed the money for the purpose for which it was raised, to various persons who claimed and received it as a right, the rule referred to will protect the defendants. The plaintiff advanced the money to the town on its bonds for the very purpose of enabling the town to discharge what was supposed to be its obligation to the drafted men, and the latter received the money by virtue of the law as it then existed under a claim of right. All parties supposed at the time that the drafted men were entitled to the money, and that it was their legal right to receive it. It now turns out that they were all mistaken, but it was a mistake of law, and therefore the drafted men who received the money under the circumstances are not under liability to the plaintiff to restore what they have received."

It seems to me that the analogy between that case and this is complete. In that case money had been advanced on bonds, the proceeds of which were paid over to certain individuals, and the bonds were subsequently declared illegal because of the unconstitutionality of the statute under which they were issued. In this case money was advanced on receiver's certificates, the proceeds of which were paid over to certain individuals, and the certificates were subsequently declared illegal because of the error of the court in authorizing them. In that case the mistake consisted in regarding as valid an act of the Legislature; in this case the mistake consisted in regarding as valid an order of the court. But in both cases the mistake was one of law, and, if there could be no redress in the one case as against the persons eventually receiving the money, I can see no grounds for similar redress in the other case.

The case of Title Guarantee & Trust Company v. Haven, 196 N. Y. 487, 495, 89 N. E. 1082, 1085, has no application to the facts in this case for two reasons. First, because the payment was made on a forged check constituting clearly a mistake of fact and not of law; and, secondly, because the payment discharged an assessment which

was a lien upon real estate of the defendants which they had contracted to convey, and such payment could not therefore by any possibility prejudice the defendants or render their position in any way uncertain or ambiguous as in this case, but on the contrary the tendency of such payment was to aid the defendants. This distinction was expressly recognized by the court in its opinion in the following language:

"Far from disturbing the defendants' affairs it aided the defendants to perform their contract to convey the premises free from encumbrances."

Second. The claims for operating expenses of the railroad rest on a different basis. The parties have stipulated "that the materials which were furnished by the creditors were necessary, and used by the receivers in the operation and construction of the railway property, and were of the reasonable value as found by the referee." That stipulation, however, does not concede that the receivers had the right to operate the road at a loss or to make the expenses thereof a lien on the property prior to the bondholders. It would be a useless task to attempt to harmonize the conflicting dicta in the opinions of courts of the various jurisdictions in respect to the propriety of giving such claims priority over mortgage bondholders. An investigation will disclose that many apparent differences of opinion arise from the fact that special equities peculiar to particular cases have sometimes controlled the decisions actually made, and given rise to such apparent differences of opinion. The question now before us must be determined with reference to its particular circumstances. There are in this case facts of a special nature which must be considered in reaching a conclusion.

The bondholders and their trustee did not consent to the appointment of the receiver appointed July 4, 1903, but, on the contrary, sought to have him superseded by a receiver appointed in an action to foreclose the mortgage. This effort on their part was defeated by the receiver, and improperly so, as this court has held in the Townsend Case, 88 App. Div. 208, 84 N. Y. Supp. 427. Thereafter the trustee instituted a proceeding to remove the receiver, which proceeding was pending at the time the voting trust agreement was made in January, 1904. That agreement contemplated the adjustment of all differences between the parties, and, when it was executed, the pending proceeding for the removal of the receiver was discontinued. On February 10, 1904, the court made an order based on that agreement authorizing the receiver to issue certificates to the extent of $250,000, and limiting the use which was to be made thereof to the general purposes expressed in the agreement as heretofore set forth. Nowhere in the record does it appear that the bondholders have otherwise enlarged the powers of the receiver or in any manner consented that he transcend the limits of said agreement and order. A fair construction of that agreement and order is that the receiver bound himself with the bondholders not to create any charges in excess of $250,000 which should become chargeable against the property of the railroad company prior to the lien of the bonds. The agreement contemplated the expenses of operation of the road, and it clearly became the duty of

the receiver to operate the road out of its earnings except as such operating expenses might be included in said certificate indebtedness. It is manifestly unfair and unjust to the bondholders that the receiver after having been left in control of the road under his express agreement not to charge the bondholders with any indebtedness exceeding $250,000 should now be permitted to do so. When he saw that he could not operate the road without incurring the indebtedness in question, he should have ceased operations, or applied to the court for instructions, when all parties interested or their representatives might have been heard.

Our attention is called to the fact that in an order authorizing the receiver to enter into this voting trust agreement there was a provision that it should be without impairment to "the rights and powers of said receiver in the premises, and any and all acts done or to be done by him in the management and control of said road under his said appointment." That provision was evidently intended for the benefit of the receiver, and to protect him in whatever rights he might have. But the order was ex parte, and whatever its force it clearly did not affect the rights of the bondholders under their contract with the receiver. Undoubtedly the order of February 10, 1904, rested entirely on the consent of the bondholders, and was limited in its effect to their consent. That was substantially so declared when those certificates were before this court in the case of Rochester Trust & Safe Deposit Company v. Oneonta, Cooperstown & Richfield Springs Railway Company, 122 App. Div. 193, 107 N. Y. Supp. 237. Presiding Justice Smith there said:

"It is objected that the order was improvidently made; that the completion of this road was not germane to the preservation of the property. If this were an open question I should incline strongly to approve of the defendants' contention. The power to authorize construction should be most cautiously exercised, and should only be exercised when the cost is limited and the promise of return abundant. If objection had been made at Special Term, the order for the issuance of the certificates for this purpose would probably never have been made. It was granted, however, without objection on the part of the bondholders, in a proceeding to which they were parties, and in which they in effect joined in the application for their issuance."

That being the case, it is proper that the receiver should be held strictly to his contract with the bondholders. In Farmers' Loan & Trust Company v. Bankers & Merchants' Telegraph Company, 148 N. Y. 315, 42 N. E. 707, 31 L. R. A. 403, 51 Am. St. Rep. 690, it was said:

"The right of a creditor of an insolvent corporation in the hands of a receiver, to have a preference over bondholders under a first mortgage is strictissimi juris."

I think, moreover, that when that agreement was made by the receiver whereby all differences were adjusted and the effort to remove him was abandoned, and the bondholders had, as they supposed, limited their liability, the receiver became something more than a receiver. He thereby assumed contract obligations with the bondholders. They entered into a contract with him on condition that their mortgage should not be displaced except to the extent of $250,000. The receiv-

ership was continued in form but the receiver assumed the character and functions of a contracting party and his duties were of a personal rather than an official character. He was more a contracting party with the bondholders than an officer of the court. He made his contract on certain conditions which should be observed. It is unimportant that all the bondholders may not have joined in the voting trust agreement. They were all represented by the Knickerbocker Trust Company their trustee, which recognized and acted upon such agreement. 122 App. Div. 193, supra, 107 N. Y. Supp. 237.

We are unable to see how these claims can be awarded priority over the bondholders without doing violence to what was clearly an intention and understanding between them and the receiver when they gave to him their consent that he might continue the operation of the road and complete its construction. Such consent was evidently given on the plain condition that no priority should be created over these bonds except to the extent of $250,000. Equity will not under such circumstances permit obvious contract obligations to be disregarded.

The order must be reversed, with $10 costs and disbursements, and the matter remitted to Special Term.

SMITH, P. J., and KELLOGG, J., concur.

HOUGHTON, J. (dissenting). I agree. with Mr. Justice COCHRANE in his conclusion that under the circumstances surrounding the making of the order permitting the receiver to issue certificates to the extent of $250,000, he was not thereafter justified in exceeding that sum even for paying the necessary running expenses of the road, and hence that the court erroneously directed the payment of certificates amounting to $25,471.84.

I am unable, however, to concur with him in a reversal of the order so far as it affects the certificates amounting to $35,000 which were issued by the receiver pursuant to the order of July 30, 1903, which order was subsequently reversed by this court. 88 App. Div. 208, 84 N. Y. Supp. 427. To the extent at least of the $32,936.72 which went directly to pay interest on the bonds due May 1, 1903, the holders of the certificates should be protected. The trustee which represented the bondholders was before the court on the making of that order. The order was not void for lack of jurisdiction, but was a good order until it was reversed and protected all parties. The certificates were issued before the reversal, and the purchasers and holders of them were innocent parties, and under no contractual obligation to pay interest on the bonds. They purchased the certificates before the order was reversed, and the money which they paid for them went direct to the trustee of the bondholders to pay past-due interest on the bonds. It was on the appeal of the trustee representing the bondholders that the order was reversed. If the transaction had been direct between the parties to the action, and the money had been paid pursuant to the direction of an order, the court would have ordered restitution upon reversal. But the money in the present instance was furnished by an innocent third party. The trustee represented the bondholders, and received and retained the money of such innocent third party and ap-

plied it to reduce the bondholders' claim. It does not seem to me an answer to say that the bondholder did not want his debt paid and preferred that the principal should become due from default in paying interest. The facts now disclosed show that the bondholder never was amply secured, and never could receive his full principal with interest because the road has been sold for a mere fraction of the bonded indebtedness. It therefore stands that those who purchased the receiver's certificates and furnished the money thereon, being under no obligations so to do, paid a part of the indebtedness held by the bondholders against the railroad. It seems to me on every equitable principle that they should be subrogated to the rights of the bondholders, which would be accomplished by permitting their certificates to be paid out of the avails of the sale in priority of the bonds. Surely the advancing of money to pay the debt of another upon the faith of an order of the court although it may subsequently be reversed, puts the party so advancing in no worse position than he would be had he advanced the money on a forged check, for example. The Court of Appeals in the recent case of Title Guaranty & Trust Co. v. Haven, 196 N. Y. 487, 89 N. E. 1082, 1085, even went to the extent of saying that an innocent third party under no obligation to pay municipal assessments upon the real property of another was subrogated to the rights of the municipality on having cashed a forged check, the avails of which went directly to the payment of such assessments.

The situation presented is not such as existed in Union Trust Company v. Monticello & Port Jervis Railway Co., 63 N. Y. 311, 20 Am. Rep. 541, where an unauthorized attempt was made to sell or pledge the coupons without the knowledge and against the will of the bondholder. Nor is it like Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, where the money was simply loaned for general or specific purposes of the corporation with the expectation of repayment from operation of the road; nor similar to the Newburgh Savings Bank v. Town of Woodbury, 173 N. Y. 55, 65 N. E. 858, where the plaintiff loaned money to a municipality which voluntarily paid it over under a void law to third parties with whom neither the town nor the plaintiff had any privity as the courts finally determined. In the present case it was the duty of the receiver to pay the coupons of the bondholders because they were legal obligations of his railroad. He sold the certificates to do so but it turned out the court made a mistake in ordering him to do it. It was a mistake of fact, or of law and fact combined. The mistake was certainly mutual as between the receiver and the purchasers of the certificates, and the latter advanced their money in good faith relying upon the validity of an order which was finally held to have been improperly granted.

The avails of the certificates to the extent of $32,936.72 having gone directly to pay the indebtedness held by the bondholders against the railroad, I think to that extent the court was right in directing priority in distribution over the bonds.

I therefore vote for a modification of the order as indicated instead of for reversal.

SEWELL, J., concurs.