### BOAS v. UPDEGROVE.

An execution having issued against land on which the judgment was no lien, the terre-tenant, supposing it to be a lien, paid the money to the sheriff, who returned the *venditioni* "money made by" the terre-tenant. The terre-tenant, before the return-day, ruled the money into court, and proved he paid under a mistake. The plaintiff in the execution is entitled to the money.

A plaintiff in an execution may conscionably receive and retain money paid thereon by one who was in fact a stranger, but supposed his land was subject to the lien of the judgment.

To entitle a party to recover money paid under a mistake, the receiver must be placed in the same position he was in at the time of the payment; and if delay has ensued the party causing it by his mistake must bear the loss.

A return of "money made" to a *venditioni* discharges the debt, and fixes the right of the plaintiff and the liability of the sheriff in the same manner as such return to a *fi. fa.*

In error from the Common Pleas of Dauphin.

*June* 22. In 1837, Boas obtained a judgment against Updegrove, and having revived it in 1844, issued a *fi. fa.*, under which land was seized and condemned, and a *venditioni* issued. At the same time a *venditioni* issued on another judgment, which was a lien on the land. Before the sale, Martin, the owner of the land, paid the sheriff the amount due on the writs, who then returned the *venditioni* issued by Boas, "money made by Martin." On the 25th November, Martin's attorney obtained a rule on the sheriff to pay the money into court. On the 28th, the sheriff paid the money in, stating that he had received and made the money as above stated. Depositions were then taken, and it appeared Martin was

a purchaser of Updegrove's interest in 1835. That, learning of the advertisement under the writs, he had paid the amount to the sheriff's deputy, when, learning this judgment was not a lien, he had given notice to the sheriff, and obtained the rule.

In December the court (ELDRED, P. J.) awarded restitution to Martin, with leave to Boas to take out a new writ.

*Boas* and *McCormick*, for plaintiff in error.—A voluntary payment cannot be recovered back, if made with knowledge; but if the money be paid into court, under no circumstances can there be a recovery, for it is a payment of record; 1 Fonb. Eq. 117; 2 Term Rep. 648; 6 Term Rep. 81; 7 Term Rep. 269. To the same effect are Espy *v.* Allison, 9 Watts, 462, the question being whether there was a conscionable receipt, and Taylor *v.* Com'rs, 3 Penna. Rep. 172, which was a payment of taxes for which the party was not liable. The same principle was decided in Herring *v.* Adams, 5 Watts & Serg. 459; and Mann's Appeal, 1 Barr, 29.

*Fisher*, contrà.—Wherever there is a payment in ignorance, or misconception of a fact, the party will be put in *statu quo;* Ege *v.* Koontz, 3 Barr, 109; Burr *v.* Veeder, 3 Wend. 412; Waite *v.* Leggett, 8 Cow. 195; 17 Mass. Rep. 380; 7 Pick. 46. The rule is well stated by Lord Mansfield, in 2 Burr. 1012, and it is confined to cases where the payment was right in equity and good conscience, though there was no legal obligation.

*June* 30. GIBSON, C. J.—It is true that money paid under a mistake of fact, may in general be recovered back, but the principle is inapplicable to purchase-money paid to a sheriff, who sells no more than the debtor's title, whatever it may be, of which the purchaser takes the risk, and consents to bear the consequences of his estimate of it. It is this which prevents him from setting up want of title in the debtor, as a defence to an action by the sheriff for the purchase-money; or, if paid before discovery of the supposed defect, from following it into court, and demanding an issue to try the title. I admit that the lien of a judgment may be contested between conflicting judgment creditors, but deny that the purchaser at sheriff's sale, or any one in his place, can aver that a judgment, on which the land has been sold, was not a lien on the debtor's title, and that it is not entitled to be paid out of the proceeds in its proper place. The sheriff sells, not an actual title, but the possibility of a title, for what it will fetch; and the judgment creditors of the particular debtor are entitled to the benefit

2 X

of what the purchaser paid for his chance. *Caveat emptor* is emphatically applicable to such a case, and the seizing creditor will be entitled to the produce of it unless it is intercepted by earlier liens.

In effect, then, was not the appellee in this case a purchaser? He did not, indeed, pay his money on the foot of an actual sale to him, as he might have done; but, what is much the same, he paid it to disencumber a title that had already been conveyed to him, and whether he paid it by mistake or not, he assumed the character of a debtor, and paid it to prevent a sale of his property. He was a purchaser, at least, of what was supposed to be an encumbrance; and if he paid it unnecessarily, he is within the principle I have indicated. The transaction was at least the compromise of a doubtful right, which is not to be unravelled on the ground of subsequently discovered inequality.

Besides, as the payment was one which the creditor might conscionably receive, it was one which he might conscionably retain. The appellee, believing that his land was bound by the appellant's judgment against his own vendor, on which it was advertised for sale, voluntarily paid the debt to the sheriff; and a volunteer who ignorantly pays another's debt, provided it be a just one, has no right of reclamation. In Espy *v.* Allison, 9 Watts, 462, a purchaser at sheriff's sale who had paid a bond erroneously supposed to be secured by a mortgage on the property, was not allowed to recover the money back. Is not that our case? On the same ground it was ruled, in Carson *v.* McFarland, 2 Rawle, 118, that an administrator who had paid a creditor more than his share of the assets of an insolvent estate, could not reclaim the excess. The general principle has not been denied, but it is said to be inapplicable to the case before us, as the money had not been paid over. Nothing, however, is more firmly established than that payment to the sheriff on the foot of a *fieri facias*, discharges the judgment as to the debtor, and leaves the sheriff alone responsible to the creditor.

Again: Money voluntarily paid by mistake cannot be recovered back, where the parties cannot be placed *in statu quo;* for where the blunder necessarily imposes a loss on some one, it must be borne by the author of it. What then was proposed to be done for the appellant? No more than to give him a second execution to sell the debtor's supposed interest in the land. But he had lost a term, and could not, for that reason, be placed at the point from which he started. That time may enter into a question of compensation, is evident from its effect upon a motion to stay proceedings on a

bail bond. Neither could the creditor, in this case, proceed with the same chance of getting satisfaction from the land, after more than a doubt had been raised as to the existence of his lien.

But, while the sheriff's return was in the way, the court could not award another execution, nor could it remove the impediment to it. Not the least extraordinary part of the proceeding was the rule to bring the money into court, before the sheriff had returned his writ. But it was returned before the order of restitution was made; nor could the court have acted, except on the basis of the return, without which it could not be judicially known that there was any thing to be restored. The sheriff may make any return he thinks proper, and as he acts on his own responsibility, the court cannot compel him to alter or amend it, if it be, as this was, sufficient in law. What, then, was the legal effect of the return that he had received the money, and had it in court? A return of levied to the value of the debt, even without a sale of the goods, *ipso facto* discharges the judgment and throws the plaintiff on the responsibility of the sheriff and his sureties; and the taking of a bond for the money has the same effect. The authorities for this plain and familiar principle were cited in Hunt *v.* Breading, 12 Serg. & Rawle, 41, and they need not be repeated here; but the subsequent case of Freeman *v.* Caldwell, 10 Watts 9, may be quoted as an authority in point. In that case a plaintiff, who had bought the defendant's cattle on his own execution, and had been deprived of them by an action of replevin founded on an adverse title, was not allowed to have another execution, because he was precluded by the sheriff's return. The common-law forms of execution show that every subsequent writ is based on the return to its predecessor, which is recited to show congruity of proceeding, and to set forth the authority of the court to award an alias or a pluries; and though the indifference of the profession to scientific principles of practice, with their consequent want of familiarity with them, added to the inexperience of the prothonotaries and clerks, perpetuated by the popular principle of official rotation, has driven every thing like technical consistency from our judicial proceedings, and introduced the most absurd barbarisms in its stead; those forms may yet be profitably consulted as the unerring indices of the law. They who forget them will soon forget the law itself. In the case before us, they are decisive of the question.

Order of the court below vacated, and ordered that the appellant have leave to take his debt and costs out of court.