# Richmond.

## TRADERS AND TRUCKERS BANK V. BLACK AND OTHERS.

### March 12, 1908.

1. INSTRUCTIONS—*Presence of Counsel.*—If the jury in a civil case come into court and ask instructions, instead of giving the instructions at once in the absence of counsel, the better practice is to have counsel present, if it can be conveniently done, in order that they may have the opportunity of excepting to the answer made to the query of the jury, or of taking such other steps as may be proper to protect their client's interests.

2. BANKS AND BANKING—*Directors—Action of a Few Without Authority or Knowledge of Board—Assumption of Debt—Repudiation by Board.*—If three of the directors, including the president and cashier, of a bank having eighteen directors, make their note and have it discounted, and use the proceeds to make good an overdraft of an insolvent depositor, and, by agreement between themselves, keep the whole matter secret from the other directors, from fear that the amount of the overdraft would get to the public and injure the credit of the bank, and agree among themselves that the bank shall make good the amount to them when they deem it safe to notify the other directors, and afterwards, at the instance of one of the makers, the bank becomes the owner of the note, and, after the claim against the depositor has become barred by the act of limitations, they disclose the whole transaction to the board of the bank, and ask that the bank charge off the note to profit and loss, the bank is under no obligation to do so, and in an action on the note by the bank against the makers they cannot defeat recovery on the ground that the note was made for the accomodation of the bank.

3. BANKS AND BANKING—*Directors—When Knowledge of Some Will Not Impute Notice to Bank—Principal and Agent.*—Under the circumstances stated in paragraph 2 above it would be both unreasonable and unjust to impute notice to the bank of a transaction which was wholly unauthorized, and which all the parties connected with it expressly agreed to and did conceal from the bank. Such knowl-

edge on the part of three directors was not notice to the bank. To apply the doctrine of constructive notice to such a case would make it an instrument of fraud.

4. BANKS AND BANKING—*Overdraft—Payment—Liability of Bank—Subrogation.*—A director of a bank may, if he chooses, without the knowledge or request of the bank, furnish the money to make good an overdraft by an insolvent depositor and have it deposited to the latter's credit and thus satisfy the debt so far as the bank is concerned, but by so doing he does not make the bank his debtor, nor acquire any claim against it, at least, beyond the right to be subrogated to the claim of the bank against the depositor which he has paid. Where A voluntarily pays to B a debt which C owes, he cannot afterwards, upon failure to collect of C what he has advanced or paid for him, recover back from B the amount paid him in satisfaction of his debt against C.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in a proceeding by motion for a judgment. Judgment for defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*James G. Martin,* for the plaintiff in error.

*N. T. Green,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

It appears that the Traders and Truckers Bank, in the city of Norfolk, was organized some months prior to May, 1902, with a board of directors consisting of eighteen persons, and an executive committee composed of six of the board of directors. During that month the A. M. Eley Lumber Company, one of its depositors, which had to its credit in the bank the sum of one hundred and fifty dollars, deposited checks to the amount of about sixteen hundred dollars. Later, during the same day, the cashier certified a check for fifteen hundred dollars, drawn by that company against its account. On the next day, the

Eley Lumber Company was adjudged a bankrupt, and the six-teen hundred dollars of checks deposited were subsequently re-turned to the bank unpaid.

When it was ascertained that the checks were worthless, and that the lumber company had been permitted to overdraw its account to the amount of $1,481.12, E. Black, President, and T. P. Gray, Cashier, of the bank, and A. G. Burrow, all three directors and members of its executive committee; W. D. Pen-der, G. A. J. Scott and A. S. J. Gammon, all of whom were large stockholders in the bank, conferred about the situation. It was urged upon them by one or more of their number, that as the bank had been organized only a short time, with a small capital, it would be bad policy and injurious if not fatal to the bank, for the public to know that it had permitted the Eley Lumber Company, whose credit was known around the town to be in bad odor, to overdraw its account to the extent it had. They thereupon determined to make the note sued on payable to themselves and have it discounted at some other bank, and make good the overdraft of the Ely Lumber Co., and agreed among themselves that as they had a lot of green directors, who "did not know how to keep their mouths shut," they would not let the other directors or the public know anything of the over-draft, or the manner in which it had been made good, and that the bank would at some future time when it was able pay them back and charge it up to the account of profit and loss. The note was accordingly made, payable on demand, discounted at the National Bank of Commerce of the city of Norfolk, which knew nothing of the purpose for which the money was borrowed, and the proceeds deposited to the credit of the Eley Lumber Co. No entry whatever of any of those transactions was made upon the bank's books, except crediting the Eley Lum-ber Company's account with that sum, as deposited by A. M. Eley, president of the company. When that deposit was made, the claim for the amount of the overdraft was turned over to Mr. Scott, one of the makers of the note, and asserted in his

name, to avoid letting the public know of the bank's connection with it, against the Eley Lumber Co. in the bankruptcy proceedings, and about one-fourth thereof collected by compromise, which was credited on the note while held by the National Bank of Commerce.

The first installment of interest which fell due on the note was paid by the makers of the note, and some of them paid their share of the next installment of interest. The Bank of Commerce held the note for nearly two years, when it insisted on payment. Mr. Burrow, one of the makers of the note, and who acted for the others in having it discounted at the Bank of Commerce, and in looking after the payment of interest thereon, requested the Traders and Truckers Bank, in which he was still a stockholder and perhaps an officer, to purchase the note from the Bank of Commerce, and carry it for a little while. This the bank agreed to do. Pursuant to that agreement, the note was sent by the Bank of Commerce, through the clearing house, to the Traders and Truckers Bank, which paid full value for it, and entered it on the bank books as a demand loan.

No interest having been paid during the following twelve months, although notices that it was due were sent to Mr. Burrow for himself and the other makers, the cashier of the bank afterwards spoke to Mr. Burrow about it and told him that he thought it should be paid. Mr. Burrow said he would pay his part, and afterwards did so, but informed the cashier that Mr. Black, another of the makers, denied that he was liable on the note. The bank then placed the note in the hands of an attorney for collection. Mr. Pender, another of the makers, afterwards paid his share of the note. The others refused to pay, and this motion by notice was instituted against the other four makers to recover judgment for the balance due on the note.

Their defense, in substance, is that the note was made for the accommodation of the Traders and Truckers Bank, under the circumstances above mentioned, and as the plaintiff bank had received the full benefit of the proceeds arising from it, in

the satisfaction and payment of the Eley Lumber Company overdraft, the note became and was fully paid when the plaintiff bank acquired it, and there was therefore no liability on the defendants.   There was a verdict and judgment in their favor.

The errors assigned are to the giving of instructions asked for by the defendants, in refusing to give an instruction offered by the plaintiff, and in refusing to set aside the verdict as contrary to the law and the evidence.

After the jury had gone to their room to consider of their verdict, they returned, and, in answer to a query propounded by them, they were further instructed by the court in the absence of counsel on both sides, under the circumstances disclosed by bill of exception numbered seven.

As the judgment will have to be reversed upon other grounds, and the action complained of is not likely to take place upon the next trial, it is unnecessary to consider the assignment of error based upon it further than to say, that the better practice is to have counsel present under such circumstances, if it can be conveniently done, in order that they may have an opportunity to except to the answer made to the query of the jury, or take such other steps as may be proper to protect their client's interest.

The other assignments of error may be considered together, as they involve in substance but one question.   That question is whether or not three directors of a bank, whose board consists of eighteen, one of the three being the president of the bank and another its cashier, and three other large stockholders in the bank, when it is ascertained that a depositor, unable to make it good, has been permitted to overdraw his account to such an extent and under such circumstances that, if known to the public, it would damage the bank, can meet together and determine that the board of directors are incompetent to deal with the situation, decide upon a course of action, borrow money by discounting a note made by themselves and payable to themselves at another bank, deposit the proceeds in the name and to the credit of the overdrawn depositor, thus showing on the

books of the bank that he is not indebted to it; turn over the claim which the bank had against him by reason of the overdraft to one of the makers of the note, who asserts it in his own name against the overdrawn depositor, in bankruptcy, and afterwards compromises the claim at twenty-five cents on the dollar, and applies the money thus received to the payment *pro tanto* of the note; keep the entire transaction by express agreement from the knowledge of the board of directors for more than three years, until after the bank, in the regular course of business has become the owner of the note, at the instance of one of the makers of the note, who is still a stockholder in the bank, all the others, except perhaps one, having disposed of their stock and severed their connection with the bank, and until the claim of the bank against the overdrawn depositor, if not paid, is barred by the statute of limitations, can defeat a recovery upon the note in the hands of the bank, upon the ground that when they made the note and borrowed the money to make good the overdraft, they had agreed among themselves that at some future time the bank should pay the note out of its profits and charge the same to the account of profit and loss?

The statement of the proposition ought to be sufficient to show that they cannot.

It is conceded, and if it were not the record shows, not only that the bank did not authorize the making of the note or know of the transaction of which it was a part until after it became the owner of it, but that the entire transaction or scheme of which it was a part was by agreement of the makers of the note purposely kept from the knowledge of its board of directors.

But it is insisted that if the bank did not have actual knowledge of the note and the transaction of which it was a part, it had constructive notice thereof, since three of the makers of the note were directors, and members of its executive committee, one of them being its president and another its cashier.

Whether or not the knowledge of either or of all three, under the facts of this case, could be imputed to the bank, if this were

a controversy between it and a third person (as was the litigation in most if not all of the cases cited by the defendants' counsel), need not be considered. That is not this case. The doctrine of constructive notice, arising from an agent's knowledge, is based upon the principle, that it is the duty of an agent to communicate facts material to the interests of his principal, of which he has notice or knowledge arising from or connected with the subject matter of his agency; and upon grounds of public policy it is presumed he has communicated such facts to his principal; but if he has not, still the principal, having entrusted the agent with the particular business, the other party has the right to deem the agent's knowledge obligatory upon his principal; otherwise the neglect of the agent might operate most injuriously to the rights and interests of such party. Story on Agency, secs. 140b, 140c (Bennett's ed.).

It is clear that such a doctrine can have no application to this case. It would be both unreasonable and unjust to impute notice to the bank of a transaction which was wholly unauthorized, and which all the parties connected with it expressly agreed to, and did, conceal from the bank. See *First Nat'l Bank* v. *Reed,* 36 Mich. 263, 268; *Barnes* v. *Trenton Gas Light Co.,* 27 N. J. Eq. 33, 36.

The doctrine of constructive notice, when properly limited, is a useful one, but to apply it to a case where the parties relying on the doctrine are the agents themselves and others who had expressly agreed that the facts in possession of the agents should not be communicated to the principal, would make it an instrument of fraud. The makers of the note had the right, if they wished or thought it to their interest to do so, without the knowledge or request of the bank, to furnish money with which to pay the overdraft of the Eley Lumber Company, and have it deposited to the credit of that company, and thus satisfy the debt so far as the bank was concerned; but by so doing they did not make the bank their debtor or acquire any claim against it, at least beyond the right to be subrogated to the claim of

the bank against the lumber company which they had paid. This right, whether they were entitled to it or not, they asserted and settled by compromise.

If the Bank of Commerce were still the holder of the note and had instituted this proceeding for its collection against the makers, there can be no question that the facts relied on in this case would furnish no bar to its recovery. Neither would the makers, when compelled to pay the note to that bank, have any cause of action against the Traders and Truckers Bank for money had and received, as the counsel for the makers insists; for nothing is clearer than that where A voluntarily pays to B a debt which C owes, A cannot afterwards, upon his failure to collect from C what he has advanced or paid for him, recover back from B the amount paid him in satisfaction of his debt against C.

It would be contrary to public policy, as well as a violation of well-settled principles of law, to hold that the facts relied on by the defendants are a bar to the plaintiff's right to recover in this case.

The judgment of the trial court must, therefore, be reversed, the verdict set aside, and the cause remanded for a new trial, with directions, that upon the next trial the proceedings had be not in conflict with the views expressed in this opinion.

*Reversed.*