[Civil No. 1263.   Filed June 6, 1913.]

[134 Pac. 285.]

## THE COPPER BELLE MINING COMPANY OF WEST VIRGINIA, a Corporation, Appellant, v. JOHN GLEESON, Appellee.

1. MONEY RECEIVED—NATURE OF ACTION.—*Assumpsit* for money received is of an equitable character and may in general be maintained by any legal evidence showing that defendant has received or obtained possession of money of plaintiff which in equity and good conscience defendant ought not to retain.

2. MONEY RECEIVED—DUTY TO REFUND.—Whether a person ought in equity and good conscience to pay over money alleged to belong to plaintiff. or whether it is unconscientious for him to retain the same, is a question dependent on the facts of each particular case.

3. MONEY RECEIVED—RIGHT TO POSSESSION—MONEY PAID FOR INVALID TITLE AT EXECUTION SALE.—Defendant having a claim against a mining company, on the property of which plaintiff had a mortgage, obtained a judgment against the company and purchased the property at an execution sale.  Plaintiff endeavored to purchase defendant's rights, but, being unable to do so, redeemed by paying the amount necessary to the sheriff, who in turn paid the money to defendant.  The mining company having neglected to perform annual assessment work, however, its claims were relocated, and two days after defendant had received the money from the sheriff he obtained an assignment of the rights of the relocator, and in a suit to quiet title successfully resisted plaintiff's claim to the property under the redemption.  *Held,* that plaintiff, having paid the money to redeem with notice of the relocation, took its chances of obtaining a good title, and, having failed to do so, could not recover the redemption money from defendant as money which he in equity and good conscience ought not to keep.

4. QUIETING TITLE—PURCHASER AT EXECUTION SALE—RIGHT TO SUE.—A purchaser of real property at a judicial or execution sale takes all the rights of the parties whose interests are sold, and hence may sue to quiet title.

5. EXECUTION — SALE — WARRANTY BY CREDITOR. — A creditor who only pursues his legal remedy without controlling the acts of the sheriff, and who is not guilty of any inequitable conduct, is not bound by any implied warranty to make good the title of property sold under execution, and hence a purchaser at execution sale has no right to recover the purchase money paid by him from the execution creditor merely because the execution debtor had no title to the property sold.

6. EXECUTION—MISTAKE—PURCHASER AT EXECUTION SALE.—As between the parties, one purchasing title to real estate on execution believed by himself and by his grantor to be doubtful cannot recover the consideration by showing that the title was in fact void.

7. PAYMENT — RECOVERY — REDEMPTION MONEY.—A redemptioner from an execution sale acquires the same interest in property sold under execution as the purchaser, and the payment of the amount necessary to redeem, being entirely voluntary, cannot be recovered in case of failure of title.

8. PAYMENT — RECOVERY — EXECUTION SALE—REDEMPTION—MISTAKE.— Where plaintiff redeemed certain mining claims from an execution sale, with knowledge of a defect in the title of the judgment debtor, it could not successfully claim that it had paid the money necessary to redeem under a mistake of fact on it subsequently appearing that the title of the debtor was invalid.

9. MONEY RECEIVED—DUTY TO RETURN—CHANGE OF POSITION.—Money received, which might be otherwise recoverable, cannot be recovered as against a defendant who has changed his position in good faith, so that he could not be restored to his former rights.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Ben Goodrich, for Appellant.

Mr. Geo. H. Neale, for Appellee.

FRANKLIN, C. J.—*Assumpsit* for money had and received. The contention of appellant, in substance, is that appellee has money belonging to it which in equity and good conscience he ought to return. On this theory the suit was prosecuted for its recovery. Omitting the unessentials, the facts may be stated as follows: The San Remo Copper Mining Company was the owner, subject to the paramount title of the United States, of some mining claims situate in Cochise county Arizona. Mr. Gleeson, the defendant below and the appellee here, had performed labor thereupon for which he had not been paid. He brought suit against the San Remo Copper Mining Company and recovered a judgment in the sum of $3,300, in which it was adjudged and decreed that he had a lien on said claims for his work and the same was foreclosed

in said decree and the mining claims ordered sold in satisfaction thereof. This judgment was obtained March 31, 1904. On March 10, 1902, the San Remo Copper Mining Company was also indebted to appellant, the Copper Belle Mining Company of West Virginia, and to secure such indebtedness it executed a mortgage on said mining claims in the sum of $6,000. The mortgage lien, however, was subsequent and subordinate to the lien of Mr. Gleeson. On March 17, 1908, an order of sale was issued to enforce the payment of the Gleeson judgment, and at a sale thereunder, on April 9, 1908, Gleeson purchased all the right, title, and interest of the San Remo Copper Mining Company in and to said mining claims, for the sum of $3,000. In due course a certificate of sale was issued to him and a duplicate copy thereof filed in the county recorder's office of Cochise county. Prior to the redemption presently referred to, the appellant endeavored to purchase from Gleeson the rights he had acquired at the foreclosure sale and offered to pay him the amount of his judgment against the San Remo Copper Mining Company, provided he would convey or cause to be conveyed to it the mining claims purchased by him at said sale. This Gleeson emphatically declined to do. Failing to get a voluntary conveyance from Gleeson, the appellant on October 12, 1908, redeemed the property by paying to the sheriff the sum of $3,240, the amount for which the property was sold, with eight per cent interest. The redemption money remained in the hands of the sheriff until November 25, 1908, on which date it was paid to Gleeson, and thereafter, on June 25, 1909, the sheriff executed to the Copper Belle Mining Company of West Virginia, the appellant, the usual deed in pursuance of said redemption.

It appears that in the year 1906 the San Remo Copper Mining Company neglected to perform the annual assessment work on the mining claims in question, and one Martin Fitzmaurice made a location of said claims at the expense and instance of appellee and for his use and benefit, the notice of location whereof being duly recorded, and on November 27, 1908, he made conveyance of the claims to Gleeson. Prior to and at the time of said redemption the appellant had full knowledge of the fact of said location by said Fitzmaurice and that the annual work had not been done on said claims for the year 1906. On December 28, 1910, appellant, the Copper Belle

Mining Company of West Virginia, brought an action against the appellee, Gleeson, to quiet its title to said mining claims, in which suit the appellee, by virtue of the Fitzmaurice location, was adjudged to be the owner and entitled to the property. The validity of the location of said mining claims by Fitzmaurice and the effect of said locations on the right, title, and interest of the San Remo Copper Mining Company, in the ground included in said claims, had not been determined prior to or at the time of said redemption from the sheriff's sale. The validity of the location was not determined prior to the judgment in the action of appellant to quiet the alleged title to the property. The court below found, among other matters, that the redemption was made by appellant without any mistake of fact, and that there was a sufficient consideration for the same in that it thereby acquired, to the extent of the debt secured by its mortgage, all the right, title, and interest of the San Remo Copper Mining Company in and to the said claims and the right to question and set up the invalidity of the location by Fitzmaurice, and concluded that the Copper Belle Mining Company of West Virginia, appellant, is not entitled to recover from John Gleeson, the appellee, any part of the said sum of $3,240 paid by it for the redemption of the mining claims.

Under the facts recited, can it be said that appellee has in his hands money which, in equity and good conscience, belongs to and ought to be paid to appellant?

*Assumpsit* for money had and received is of an equitable character, and it may in general be maintained by any legal evidence showing that the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff. *Smith* v. *Farmers & Merchants' Bank,* 2 Cal. App. 377, 84 Pac. 348; *Law* v. *Uhrlaub,* 104 Ill. App. 263; *Henderson* v. *Koenig,* 192 Mo. 690, 91 S. W. 88; *Carpenter* v. *Southworth,* 165 Fed. 428, 91 C. C. A. 378; *Moses* v. *McFarlane,* 2 Burr. 1009.

But the question whether a person ought in equity and good conscience to pay over, or whether it is unconscientious for him to retain what he has received from another, is a question dependent upon the facts of each particular case. The maxim, "*Ex aequo et bono*," usually applied in such cases, as interpreted, is "in justice and good dealing." 1 Story, Equity

Jur., sec. 965. What might be against conscience or contrary to justice and good dealing in one case and under one set of facts would not be in another.

In this case is there a right, or equity, or conscience upon which the defendant can plant himself? It is perfectly clear from the record in this case that the consummation devoutly wished by both appellant and appellee was title to the claims of the San Remo Copper Mining Company. This was the goal that each was striving for. Gleeson was doubtful if the title he had acquired at the foreclosure sale was good, but to make assurance doubly sure he was anxious to satisfy his judgment and take whatever interest his judgment debtor had in the property, and as a further safeguard to obtain whatever rights that inured to the relocation by Fitzmaurice. The appellant, failing in its efforts to get a voluntary conveyance from Gleeson, wished to prevent him from getting a sheriff's deed which might cure any possible defects in his title by virtue of the Fitzmaurice location and clothe itself with power to contest the relocation of the property. With this impelling object of defeating Gleeson in getting title, it was anxious to pay over the redemption money under the circumstances and thereby step into the shoes of the San Remo Copper Mining Company in order to assert its title and contest the validity of such relocation.

The general rule is that a purchaser at a judicial or execution sale takes all the rights of the parties whose interests are sold, and it is on this principle that the right of such a purchaser to bring a suit to quiet title to the real estate purchased has been recognized. The conduct of Gleeson in this transaction cannot be criticised. His conduct was peculiarly open and aboveboard. There was no element of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or other inequitable conduct in the matter.

With full knowledge of all the facts, without any instrumentality upon the part of Gleeson influencing its action, but in opposition to his wishes, it paid the redemption money into the hands of the sheriff and took its chances in a lawsuit to quiet title to the property. True, in the action it subsequently brought for such purpose, Gleeson was successful in maintaining the Fitzmaurice location, but that is a matter which the redemptioner should have considered before it parted with

the money and took just the title and interest which the San Remo Copper Mining Company had. If the matter turned out very differently from what was expected, the miscalculation is not such a mistake, either of fact or of law, within the meaning of the equitable doctrine as entitles the disappointed party to any relief. The appellant was in a position to calculate the chances, and it certainly assumed the risks.

A creditor who barely pursues his legal remedy, without controlling in any way the acts of the sheriff, and not being guilty of any inequitable conduct, is not bound by any implied warranty to make good the title of property sold under execution. It is held, with perhaps the single exception of the jurisdiction of Maine (see *Dresser* v. *Kronberg,* 108 Me. 423, Ann. Cas. 1913B, 542, 36 L. R. A., N. S., 1218, 81 Atl. 487), that in the absence of a statute a purchaser at an execution sale has no right to recover the purchase money paid by him from the execution creditor *merely* because the execution debtor has no title to the property sold, and the sale thereof passes no title to the property. *Neal* v. *Gillaspy,* 56 Ind. 451, 26 Am. Rep. 37; *Lewark* v. *Caster,* 117 Ind. 206, 10 Am. St. Rep. 40, 3 L. R. A. 440, 20 N. E. 119; *McGhee* v. *Ellis,* 4 Litt. (Ky.) 244, 14 Am. Dec. 124; *Hitchcock County* v. *Cole,* 80 Neb. 375, 114 N. W. 276; *Murphy* v. *Higginbottom,* 2 Hill L. (S. C.) 397, 27 Am. Dec. 395; *Whitmore* v. *Parks,* 3 Humph. (Tenn.) 95; *England* v. *Clark,* 5 Ill. (4 Scam.) 487; *Dunn* v. *Frazier,* 8 Blackf. (Ind.) 432; *Henderson* v. *Overton,* 2 Yerg. (Tenn.) 394, 24 Am. Dec. 492; *Weidler* v. *Farmers' Bank,* 11 Serg. & R. (Pa.) 134; *United States* v. *Duncan,* 12 Ill. 523, Fed. Cas. No. 15,003.

Notwithstanding the stringency of the rule of *"caveat emptor,"* there are certain exceptions recognized by the courts. With certain modifications, the rigor of the doctrine is relaxed, but the principles upon which equity bases such relaxation are absent from the present case. "The purchaser manifestly is not entitled to the succor of the court if he has purchased under a contract for such estate, right, title, or interest as the supposed owner may have in the lands disposed of. Although this proposition hardly calls for any weight of authority, as no pretense of warranty would be set up, it has been before the courts on several occasions when it was decided that the purchaser was not entitled to relief." The annotator

citing authorities. 135 Am. St. Rep. 921, note ''d,'' to case of *Kirk* v. *Oakey.* Upon an execution sale of real property the purchaser is substituted to and acquires all the right, title and interest and claim of the judgment debtor thereto. Par. 2575, Rev. Stats. Ariz. 1901. Of course the rule as to the recovery of the money paid by the execution purchaser might be different if the sale was made under a void judgment.

And *inter partes* one purchasing a title to real estate believed by himself and by his grantor to be doubtful cannot recover back the consideration therefor by showing that such title was in fact void. *Granger* v. *Olcott,* 1 Lans. (N. Y.) 169.

A redemptioner acquires the same interest as the purchaser, and under the various redemption statutes the payment of the amount necessary to redeem by a party so entitled is purely voluntary, and such money is not recoverable back. 17 Cyc. 1339; *Fowler* v. *Hall,* 7 Bradw. (7 Ill. App.) 332; *American Ex. Bank* v. *Morris etc. Co.,* 6 Hill (N. Y.), 362; *Weaver* v. *Stacey,* 93 Iowa, 683, 62 N. W. 22; *Manning* v. *Poling,* 114 Iowa, 20, 83 N. W. 895, 86 N. W. 30; *Wessel* v. *Johnston etc. Co.,* 3 N. D. 160, 44 Am. St. Rep. 529, 54 N. W. 922. The general rule being that a party cannot recover money voluntarily paid with a full knowledge of all the facts. *Hardaway* v. *South. Ry. Co.,* 90 S. C. 475, 73 S. E. 1020; *Traders' etc. Bank* v. *Black,* 108 Va. 59, 60 S. E. 743; *Herald Sq. Co.* v. *Rocca,* 48 Misc. Rep. 650, 96 N, Y. Supp. 189; *Beard* v. *Beard,* 25 W. Va. 486, 52 Am. Rep. 219.

The appellant urges that it ought to recover in this action on the ground of mistake, because it believed that at the time it redeemed said property the San Remo Copper Mining Company owned the same, and that it passed by the execution sale to Gleeson. Such belief, however, was not induced by any act of Gleeson; he was free from any inequitable conduct. The appellant having full knowledge of the facts concerning the Fitzmaurice location, the belief proceeded from a consideration of the facts that in the light of the facts, as a matter of law, in its judgment the relocation of the property by Fitzmaurice was void. But this was the very hazard that appellant took when, with its eyes wide open, so to speak, to a contest over the Fitzmaurice relocation, it paid the redemption money. Under the circumstances of this case such an error

of judgment may not be relieved against upon any equitable principle of which we are aware.

Mr. Pomeroy says: "The doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party with full knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights, and liabilities, under an ignorance or error with respect to the rules controlling the case, courts will not, in general, relieve him from the consequences of his mistake. The reasons are obvious. The administration of justice, the law itself as a practical system of the regulation of human conduct, requires that some fundamental assumptions should be made as postulates. The most important perhaps, of all these is the assumption that all persons of sound and mature mind are presumed to know the law. If ignorance of the law were generally allowed to be pleaded, there could be no security in legal rights, no certainty in judicial investigations, no finality in litigations. While this general doctrine prevails in equity as well as law, its operation is not there universal; it is subject to modifications and limitations; equity *does* some time exercise its jurisdiction on the occasion of mistakes of law. If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid. . . ." Pomeroy, Eq. Juris., sec. 842. See, also, *Knickerbocker etc. Co.* v. *Oneonta etc. Co.*, 138 App. Div. 687, 123 N. Y. Supp. 822; *Leach* v. *Cowan*, 125 Tenn. 183, 140 S. W. 1070; *Houlehan* v. *Inhabitants etc.*, 108 Me. 397, Ann. Cas. 1913B, 435, 81 Atl. 449.

Another view which strengthens the position of appellee is that, if appellant is permitted to recover, the position of appellee will be changed to his prejudice. Clearly the Fitzmaurice relocation did not satisfy the Gleeson judgment based on his labor performed on the property. Under our statute this judgment remained alive for five years, or until March 31, 1909, when, unless revived by appropriate action, it became barred. Gleeson cannot be charged with negligence in not having the judgment revived, because he relied upon its

payment by the redemption money, and so long as it remained satisfied he was in no position to have the judgment revived. So, if appellant is permitted to recover, Gleeson will have lost his judgment and through no fault of his own but by the act of appellant. Such result would be most inequitable.

The rule is that money paid which might be otherwise recoverable cannot be recovered as against persons who have changed their position in good faith so that their original position cannot be restored. The blunder necessarily imposes a loss on someone, and it must be borne by the author of it. 30 Cyc. 1321; *Behring* v. *Somerville,* 63 N. J. L. 568, 49 L. R. A. 578, 44 Atl. 641; *Byrne* v. *Hibernia Bank,* 31 La. Ann. 81; *Boas* v. *Updegrove,* 5 Pa. 516, 47 Am. Dec. 425.

Under the circumstances of this case, the payment sought to be recovered is one which the appellee might conscionably receive, and it is therefore one which he might conscionably retain.

We conclude that the judgment of the lower court is correct, and it is affirmed.

CUNNINGHAM and ROSS, JJ., concur.

---

NOTE.—As to right of purchaser at execution sale to recover from judgment creditor when property purchased does not belong to judgment debtor, see note in Ann. Cas. 1913B, 544.

As to right of purchaser at judgment or execution sale to bring suit to quiet title, see note in Ann. Cas. 1913B, 380.