#27695, #27706-a-SLZ

**2016 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

(#27695)

FARMPRO SERVICES, INC.,                              Plaintiff,

    v.

DAVID FINNEMAN, CONNIE
FINNEMAN, CHAD FINNEMAN,
ARMSTRONG FARMS, VERN
ARMSTRONG, and HOPE ARMSTRONG,          Defendants,

    and

MICHAEL ARNOLDY and
ANN ARNOLDY,                                         Defendants and Appellees,

    and

ROCK CREEK FARMS GENERAL
PARTNERSHIP, and
WARRENN ANDERSON,                               Defendants and Appellants.

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Judge

* * * *

ARGUED ON AUGUST 30, 2016

OPINION FILED **10/19/16**

(#27706)

| | |
|---|---|
| FARMPRO SERVICES, INC., | Plaintiff, |
| v. | |
| ARMSTRONG FARMS, VERN ARMSTRONG, HOPE ARMSTRONG, WARRENN ANDERSON, and ROCK CREEK FARMS GENERAL PARTNERSHIP, | Defendants, |
| and | |
| DAVID FINNEMAN, CONNIE FINNEMAN, and CHAD FINNEMAN, | Defendants and Appellants, |
| and | |
| MICHAEL ARNOLDY and ANN ARNOLDY, | Defendants and Appellees. |

* * * *

(#27695)

BRIAN L. UTZMAN of
Smoot & Utzman, PC
Rapid City, South Dakota

and

STEVEN W. SANFORD of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                 Attorneys for appellants Rock
                                          Creek Farms General
                                          Partnership and Warrenn
                                          Anderson.

(#27706)

JAMES P. HURLEY of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                  Attorneys for appellants
                                          Finnemans.

ELIZABETH S. HERTZ
VINCE M. ROCHE of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota

and

ROBERT R. SCHAUB of
Sundall, Schaub & Fox
Chamberlain, South Dakota                 Attorneys for appellees
                                          Arnoldys.

ZINTER, Justice

[¶1.]        The issue in this appeal concerns a redemptioner's entitlement to the

return of money spent in unsuccessful attempts to redeem in a mortgage

foreclosure.  A landowners' successor in interest, a landowners' strawman, and

judgment lien creditors engaged in competing attempts to redeem in two mortgage

foreclosures.  Although the successor in interest successfully redeemed from a

judgment lien creditor in the first foreclosure, a senior mortgagee started a second

foreclosure; a second judgment lien creditor redeemed in the second foreclosure; and

the second foreclosure court ruled that the landowners and successor in interest

waived the statutory right to an owner's final right of redemption.  The landowners

and successor in interest unsuccessfully appealed the second foreclosure court's

waiver ruling, and they lost the land to the second judgment lien creditor.  The

parties then returned to the first foreclosure court where the successor in interest

made an equitable claim for the recovery of redemption money paid and still in the

custody of the sheriff.  The landowners sought the same relief, plus reimbursement

for other claimed redemption payments.  The circuit court ruled that the

landowners and successor in interest had no equitable claim to the money on

deposit with the sheriff even though the successor in interest redeemed in the first

foreclosure on the mistaken belief that it would be able to exercise the owner's final

right of redemption in the second foreclosure.  The court entered summary

judgment awarding the money on deposit to the judgment lien creditor from whom

the redemption had been made, and the court denied the landowners' and successor

in interest's motions for summary judgment on their equitable claims.  Landowners

(Appeal No. 27706) and their successor in interest (Appeal No. 27695) appeal. We affirm.

*Facts and Procedural History*

[¶2.] David and Connie Finneman were the owners of approximately 16,700 acres of farmland in Pennington and Meade Counties. Finnemans owned 7,500 acres in fee, and they had purchased 9,200 acres on a contract for deed from L & L Partnership (L & L). Finnemans mortgaged all of the land (except 200 acres acquired by the contract for deed) to FarmPro Services, Inc. (FarmPro) and Rabo Agrifinance, Inc. (Rabo). The Rabo mortgage was senior to the FarmPro mortgage.

[¶3.] Finnemans defaulted, and in 2000, FarmPro initiated foreclosure proceedings. In 2006, FarmPro purchased the property at the foreclosure sale for $1,439,130.31 and assigned the certificate of sale to Dr. Lee Ahrlin. Michael Arnoldy—who held judgments against Finnemans—redeemed from Ahrlin for $1,765,232.50.

[¶4.] Finnemans transferred their interest in the property to Rock Creek Farms (RCF), a partnership formed by Finnemans and Warrenn Anderson. On May 10, 2007, Anderson paid $822,000 to extend the landowners' final right of redemption for one year. On May 6, 2008, Finnemans confessed judgment to two creditors; and Daniel Mahoney, another associate of Finnemans, purchased those judgments. Using money provided by RCF, Mahoney redeemed from Michael by depositing $1,219,734.29[1] (hereinafter referred to as "Mahoney payment") with the

---

1. It appears that this sum is less than Michael Arnoldy's redemption payment because Anderson's payment to extend the redemption period was a partial
(continued . . .)

sheriff. Michael, however, refused to accept the payment so he could challenge the validity of the judgments Mahoney had used to redeem. Nevertheless, Mahoney was issued a certificate of redemption.

[¶5.]    On July 3, 2008, Michael's sister, Ann Arnoldy—who also held judgments against Finnemans—redeemed from Mahoney for $1,244,570.43. Mahoney accepted the payment and Ann was issued a certificate of redemption. On September 12, 2008, RCF exercised the landowners' final right of redemption and redeemed from Ann for $1,280,000. RCF thus held the final certificate of redemption in the FarmPro foreclosure.

[¶6.]    However, in July 2009, Rabo commenced a separate foreclosure action. The property was sold at another sheriff's sale, and Ann redeemed again. The Rabo foreclosure court initially entered a judgment awarding RCF the landowners' final right of redemption. However, the Rabo court later vacated its judgment and ruled that RCF and Finnemans had waived the owner's right of redemption in a loan restructuring agreement. RCF and Finnemans appealed, but the appeal failed on procedural grounds and the circuit court's waiver decision became final. *See Rabo Agrifinance, Inc. v. Rock Creek Farms*, 2012 S.D. 20, ¶ 9, 813 N.W.2d 122, 126. Consequently, Ann obtained the sheriff's deed in the Rabo foreclosure.

[¶7.]    During the course of the Rabo foreclosure, L & L also foreclosed on its contracts for deed. Based on RCF's and Finnemans' unsuccessful appeal of the Rabo foreclosure court's waiver decision, the L & L foreclosure court ruled that Ann

_____

(. . . continued)
        redemption that reduced the total amount required to redeem. *See* SDCL 21-52-13, -21. The parties have not briefed the matter.

held both equitable ownership of the contract for deed property and the right to cure the default under the contracts. The L & L court's decision was affirmed on appeal, and Ann became the record title owner of all the property at issue. *See L & L P'ship v. Rock Creek Farms*, 2014 S.D. 9, ¶¶ 24-25, 843 N.W.2d 697, 705.

[¶8.]     The issues in this appeal arose in March 2012 when RCF returned to the FarmPro foreclosure court. RCF moved that court to award it the Mahoney payment, which was still in the custody of the sheriff. RCF argued that because it had not expected to lose the owner's final right of redemption in the Rabo foreclosure, it had mistakenly redeemed in the FarmPro foreclosure. RCF further argued that because it lost title to the land in the Rabo foreclosure, it was entitled to recover the redemption money it paid in the FarmPro foreclosure.

[¶9.]     The FarmPro court ruled that it retained equitable jurisdiction to determine whether RCF and Finnemans "made a bona fide mistake in their attempt to redeem and whether Arnoldys [could] retain both redemption payments and title to the property." *See Way v. Hill*, 41 S.D. 437, 171 N.W. 206, 207 (1919) (supporting the FarmPro court's assertion of equitable jurisdiction). Arnoldys and RCF then filed cross motions for summary judgment claiming entitlement to the Mahoney payment. Finnemans also filed a motion for summary judgment, stating that their motion was "independent of, in addition to, and in support of" RCF's motion. Finnemans later filed an affidavit requesting that Arnoldys pay Finnemans $4,363,469 for what they called "partial redemption payments" made by Finnemans, RCF, and their receiver. Those payments were made for a variety of things including the Mahoney redemption, real-estate taxes, rent, debt owed to other

creditors, and Rabo loan payments. Finnemans' affidavit also asked for title to 200 acres of property that was part of the L & L foreclosure.

[¶10.]    The circuit court sent a letter to the parties to clarify whether the issue to be decided under the motions for summary judgment was entitlement to the Mahoney payment. Although Arnoldys agreed, the record is not clear whether RCF agreed, and Finnemans responded with a letter reasserting all the requests they made in their affidavit.

[¶11.]    The circuit court limited its decision to the relief requested in the summary judgment motions; i.e., who was entitled to the Mahoney payment. The court found that RCF had no claim to the money because RCF was reimbursed for Mahoney's redemption when Ann Arnoldy redeemed from Mahoney. The court also found that RCF's decision to redeem in the FarmPro foreclosure was not the kind of "invalidating mistake" that permitted equitable relief. The court ruled that RCF took a calculated risk that the interest it obtained through redemption in the FarmPro foreclosure could later be lost in the foreclosure of a senior mortgage. The court ultimately ruled that Michael was entitled to the Mahoney payment:

> RCF's calculated risk and decision to redeem in the FarmPro proceeding provides no basis for claiming a right to the [Mahoney payment]. As the person from whom Mahoney sought to redeem from, Michael Arnoldy had a right to accept the payment when it [was] deposited in 2008, and he retains that right today.

The court entered summary judgment awarding Michael the money from the Mahoney payment, it denied RCF's and the Finnemans' motions, and these appeals followed.

[¶12.] Because the Appellants' claims on appeal are much broader than the limited claim decided by the circuit court, we must first determine the appropriate issues to be decided. The circuit court's decision and judgment only resolved entitlement to the Mahoney payment ($1,219,734.29) that was tendered to Michael and was still on deposit with the sheriff. On appeal, however, RCF disavows a direct claim to that payment. Instead, it argues that the circuit court erred in failing to award RCF the redemption payment it made to Ann ($1,280,000) and the payment Anderson made to Michael ($822,000) to extend the redemption period. RCF only contends that it should recover the Mahoney payment as a "down payment" on these other two requests. Finnemans support RCF's arguments and make claims to their additional asserted "redemption payments" totaling $4,363,469. We decline to consider RCF's and Finnemans' claims to anything other than the Mahoney payment. We do so because the circuit court made no decision and entered no judgment respecting the other claims.[2] Therefore, we limit our review to the question whether Michael was entitled to summary judgment on the Mahoney payment. We also consider RCF's related claim that the circuit court erred in refusing to compel Arnoldys to respond to certain interrogatories.

---

2. We also note that even if the other claims were properly postured for resolution by the circuit court—a proposition that is questionable at best— Appellants were not entitled to summary judgment on those claims. Appellants themselves contend that there are disputed issues of material fact to be resolved regarding equitable entitlement on the other claims.

*Decision*

*The Mahoney Payment*

[¶13.] Because Mahoney, a judgment lien creditor, redeemed from Michael, a prior redemptioner, Michael had the statutory right to the Mahoney redemption payment. *See* SDCL 21-52-19, -14 (providing that holders of junior liens may redeem from a prior redemptioner by paying the prior redemptioner the purchase price at the sale plus sums paid to protect the interest acquired together with interest). RCF, however, claims that it is inequitable to allow Michael Arnoldy to retain the redemption money that RCF paid to redeem in the FarmPro foreclosure *and* allow Ann Arnoldy to retain the land obtained in the Rabo foreclosure.[3]

[¶14.] RCF relies on case law that, it claims, requires the return of redemption money as restitution[4] when redemption fails. However, RCF's redemption did not fail. RCF successfully redeemed from Ann and obtained the final certificate of redemption in the FarmPro foreclosure. RCF did subsequently

---

3.  At oral argument, RCF explained that Arnoldys had taken the position below that they were acting in concert for purposes of the redemption money.

4.  RCF contends that the circuit court failed to distinguish restitution and unjust enrichment. RFC cites the third definition of restitution in Black's Law Dictionary, which defines restitution as the "restoration of some specific thing to its rightful owner or status." *Restitution*, Black's Law Dictionary 1507 (10th ed. 2014). This is an abbreviated definition. The primary definition indicates restitution is: "A body of substantive law in which liability is based not on tort or contract but on the defendant's unjust enrichment." *Id.* "According to the leading English authorities, 'the law of restitution is the law relating to all claims, quasi-contractual or otherwise, that are founded upon the principle of unjust enrichment.'" Bryan A. Garner, *Dictionary of Modern Legal Usage* 765 (2d ed. 1995) (quoting Robert Goff & Gareth Jones, *The Law of Restitution* 3 (3d ed. 1986)). RCF has not identified a distinction that is material to the disposition of this case.

lose that interest in the Rabo foreclosure, but that was a separate, subsequent foreclosure action involving a senior mortgagee. The cases cited by RCF involved single foreclosures in which the courts determined that it may be unjust for an ultimate titleholder to retain title and a redemption payment from those who are found to have no right to redeem. *See Abrams v. Porter*, 920 P.2d 386, 391 (Idaho 1996) (returning redemption money after concluding the corporation that assigned redemptioners their redemption rights was dissolved at the time of assignment); *E. Jersey Sav. & Loan Ass'n v. Shatto*, 544 A.2d 899, 902-03 (N.J. Super. Ct. Ch. Div. 1987) (returning redemption money to mortgagors after they tried to redeem in a "sham" effort to delay foreclosure); *Davis Mfg. & Supply Co. v. Coonskin Props., Inc.*, 687 P.2d 484, 486 (Colo. App. 1984) (returning redemption money after setting aside order determining the amount to redeem); *see also Way*, 171 N.W. at 207 (estopping judgment creditor from interposing the statutory period of redemption on redemptioner after judgment creditor accepted partial redemption payment). We conclude that these authorities do not govern redemptioner risks of loss from subsequent, independent foreclosures by senior creditors.

[¶15.] RCF, however, argues that in determining the right to equitable relief, the circuit court should not have considered risk: what the circuit court described as RCF's "calculated risk" in redeeming. RCF contends that risk is irrelevant under its theory of restitution. We disagree. The circuit court asserted jurisdiction to determine the "legal rights of both creditor and redemptioner under settled rules of equity jurisprudence applicable in cases of *excusable mistake* in attempts in good faith to exercise legal rights." *See Way*, 171 N.W. at 207 (emphasis added). But "a

person who *without mistake*, coercion, or request has unconditionally conferred a benefit upon another is not entitled to restitution." *Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 24, 865 N.W.2d 854, 864 (emphasis added). And "[a]n invalidating mistake does not occur where the claimant bears the risk of loss." *Id.* ¶ 25. Accordingly, the circuit court properly considered RCF's risk of loss in deciding to redeem.

[¶16.]        RCF and Finnemans also argue that the circuit court erred in concluding that RCF took a calculated risk in deciding to redeem. They contend that there was no risk of losing their FarmPro redemption interest in a subsequent foreclosure because at the time RCF redeemed, SDCL 21-52-7 gave RCF the owner's final right of redemption in any subsequent foreclosure actions. Further, they note SDCL 44-1-8 provides that agreements waiving the right of redemption are void. Thus, RCF and Finnemans contend that losing the owner's final right of redemption was an invalidating mistake; they could not be "stripped" of that right, and RCF would not have redeemed if it knew that the Rabo foreclosure court would rule that Finnemans waived the owner's final right of redemption.

[¶17.]        Although RCF and Finnemans allege that they were wrongfully "stripped" of the owner's right of redemption, they must be deemed to have assumed the risk of such a decision, and the Rabo court waiver decision is not subject to collateral attack in this proceeding.[5] Finnemans participated in the prior loan

---

5.    RCF and Finnemans contend that the FarmPro "court erred in determining that Rock Creek Farms waived its rights to redemption." However, the FarmPro court—the circuit court here—did not make that determination. RCF litigated and lost the waiver issue in the Rabo foreclosure. *See Rabo*
                                                                    (continued . . .)

restructuring, and there was law in existence at the time of the FarmPro redemptions that indicated a waiver of an owner's right of redemption could be enforced in some circumstances like this.[6] Moreover, RCF knew that it was taking a calculated risk by investing money in the FarmPro foreclosure. In a February 19, 2008 letter to counsel for the Finnemans, an attorney representing RCF investor Anderson described the RCF investments as "a calculated risk" and "gambling with [Anderson's] money." Under these circumstances, both Finnemans and RCF must be deemed to have assumed the risk that Finnemans' waiver of the owner's final right of redemption might be enforced.

[¶18.] Because the waiver issue was at the very least an open question, RCF bore the risk of losing its interest in a subsequent foreclosure. The 2006 FarmPro

---

(. . . continued)

*Agrifinance, Inc.*, 2012 S.D. 20, ¶ 9, 813 N.W.2d at 126. Here, the circuit court simply took notice of the *Rabo* court's decision, and neither RCF nor Finnemans cite authority allowing them to collaterally attack that final decision in this appeal.

6. Prior to the time RCF redeemed, this Court decided a case indicating the possibility that a mortgagor could waive the right to redeem in a subsequent transaction. *Myers v. Eich*, 2006 S.D. 69, ¶ 32, 720 N.W.2d 76, 86 (stating equitable mortgagee has burden of establishing that mortgagor knowingly waived right of redemption for fair and adequate consideration). There were also other authorities that specifically cast doubt upon RCF's and Finnemans' claim of an absolute, unwaivable owner's right of redemption. *See, e.g.*, *O'Connor v. Schwan*, 251 N.W. 180, 181 (Minn. 1933) ("It firmly is established that a mortgagor may not, at the time of, nor as a part of, the mortgage transaction, bargain away his equity of redemption. . . . However, it is settled equally well that a mortgagor may bargain away, sell, or convey to the mortgagee his equity of redemption subsequent to the time that he executed the mortgage . . . ."); *see also* 59A C.J.S. *Mortgages* § 1385 ("A mortgagor may waive a statutory right of redemption by subsequent agreement, provided that the agreement is equitable and supported by adequate consideration.").

notice of sheriff's sale put RCF on notice that the land was sold (and therefore redeemed) subject to Rabo's superior $4,200,000 mortgage that could also be foreclosed. Foreclosure by a senior mortgagee "is a matter which the redemptioner should have considered before it parted with the money." *Copper Belle Mining Co. of W. Va. v. Gleeson*, 134 P. 285, 287 (Ariz. 1913). That is because the redemptioner takes the land subject to senior mortgages. *See Co-operative Lumber Co. of Hecla v. Treeby*, 56 S.D. 313, 228 N.W. 390, 392 (1929); *L & L P'ship*, 2014 S.D. 9, ¶ 17, 843 N.W.2d at 703-04; *Kruse v. State*, 73 S.D. 49, 55, 38 N.W.2d 925, 928 (1949); *see also* SDCL 21-48A-2. Therefore, as the Arizona Supreme Court noted in a similar redemption case, even though "the matter turned out very differently from what was expected, the miscalculation is not such a mistake, either of fact or of law, within the meaning of the equitable doctrine as entitles the disappointed party to any relief." *Copper Belle Mining*, 134 P. at 287.

[¶19.] Ultimately, RCF must be deemed to have assumed the risk that the interest it obtained in the FarmPro foreclosure—an interest in heavily encumbered land—could be lost in a subsequent foreclosure; a foreclosure that was on the horizon at the time it redeemed. It did not need to know the exact circumstances under which the risk of loss would materialize; only that loss was possible. *See* Restatement (Third) of Restitution and Unjust Enrichment § 5 cmt. c (Am. Law Inst. 2011) ("Faulty prediction will not support a claim in restitution, and invalidating mistake is to be distinguished from the error in judgment that is visible in hindsight."). The circuit court did not err in denying RCF and Finnemans equitable relief and awarding Michael summary judgment on his statutory claim to

the Mahoney payment. RCF's redemption (through Mahoney) was not an invalidating mistake: RCF took a calculated risk when it redeemed in the FarmPro foreclosure.

[¶20.]     RCF and Finnemans, however, also argue that summary judgement was improperly granted because there were outstanding disputes of fact on their equitable claims. They contend that there are disputes of fact whether RCF redeemed in good faith and whether Arnoldys were unjustly enriched. But because RCF failed to establish entitlement to restitution by making the threshold showing of an invalidating mistake, these other unresolved issues of fact were not material. *See supra* ¶ 19; *see also Dowling Family P'ship*, 2015 S.D. 50, ¶ 19, 865 N.W.2d at 862 (indicating that a claimant must establish all the elements necessary to support a claim of unjust enrichment).

[¶21.]     Finnemans separately argue that factual disputes exist whether there should be restitution for additional money spent ($4,363,469 less the Mahoney payment) on real estate taxes, debt payments, and rent paid during foreclosure. They also argue that there are factual disputes whether RCF made redemption payments without fraud or deceit; whether Finnemans had standing to move for summary judgment; and whether Arnoldys violated the L & L judgment of foreclosure as to redemption of the 200 contract for deed acres. But for the reasons just expressed, these claims (other than redemption of the contract for deed acres) are based on the theory of unjust enrichment, and the facts relating to these elements of unjust enrichment are not material because Finnemans failed to satisfy the threshold requirement of showing an invalidating mistake. Further, the claims

to money other than the Mahoney payment were not decided by the circuit court; Finnemans only raised these claims by affidavit and letter, and the court declined to consider them. Finally, Finnemans have cited no authority supporting an argument that they are entitled to obtain, in the FarmPro foreclosure, title to the 200 acres that were the subject of the L & L contract for deed foreclosure. Thus, Finnemans have not identified any disputes of *material* fact that precluded summary judgment on Michael's entitlement to the Mahoney payment.

*Discovery Requests*

[¶22.]    RCF argues that the circuit court erred in not compelling Arnoldys to respond to certain interrogatories. RCF claims that its "discovery was necessary to address the doctrine of unclean hands and the proposition that one seeking equity must do equity." But Michael sought no equitable relief. Michael merely requested enforcement of his statutory right to the redemption payment. Therefore, any facts developed in additional discovery concerning Arnoldys' unclean hands would have been irrelevant to the question actually decided. The circuit court did not abuse its discretion in declining to compel Arnoldys' response to interrogatories that were immaterial to the summary judgment question that was decided. *See Anderson v. Keller*, 2007 S.D. 89, ¶ 5, 739 N.W.2d 35, 37 (articulating the abuse of discretion standard for discovery matters).

*Conclusion*

[¶23.]    We conclude that RCF's decision to furnish money for Mahoney to redeem in the FarmPro foreclosure was not an invalidating mistake that permitted equitable relief. Further, Michael had the statutory right to the Mahoney payment.

We affirm the circuit court's judgment granting summary judgment in favor of

Michael.  RCF's and Finnemans' other arguments are not appropriate for appellate

review.

[¶24.]        GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN,

Justices, concur.